## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 06-0212 (JR)** |
| ) | |
| **$225,444.14 in UNITED STATES** ) | |
| **CURRENCY** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **FRANKLIN A. GLASCON &** ) | |
| **G. RENEE GLASCON** ) | |
| ) | |
| **Claimants,** ) | |
| ) | |

### PLAINTIFF'S MOTION TO LIFT STAY AND FOR SUMMARY JUDGMENT

***COMES NOW***, plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully to move to lift the stay previously granted on claimant Franklin A. Glascon's motion, and to move for summary judgment in plaintiff's favor in all respects. As this Court knows, claimant previously obtained a stay to avoid discovery that might burden his right against self-incrimination. But, plaintiff United States is prepared to proceed without seeking to compel either claimant to answer any discovery. The pleadings and exhibits with this motion show that there are no material facts in dispute and that, as a matter of law, the United States is entitled to judgment in its favor. Accordingly, there is no need for a continued stay, and summary judgment should be granted for plaintiff United States.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Civil Rules 7(h) and 56.1, attached to this motion are: (1) a Statement Of Material Facts As To Which There Is No Genuine Dispute; (2) a Memorandum Of Points And Authorities In Support Of

Plaintiff's Motion To Lift Stay And For Summary Judgment, plus two exhibits; and, (3) a proposed

order granting plaintiff's motion.

Respectfully submitted,

_/s/ _____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____

WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

_/s/_____

BARRY WIEGAND, D.C. Bar #424288
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., fourth floor
Washington, D.C. 20530
(202) 307-0299

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August 2007, a copy of (1) Plaintiff's Motion To Lift Stay
And For Summary Judgment, (2) Statement Of Material Facts As To Which There Is No Genuine
Dispute, (3) Memorandum Of Points And Authorities In Support Of Plaintiff's Motion To Lift Stay
And For Summary Judgment, plus exhibits, and (4) proposed order has been served by means of the
Court's ECF system to claimants's counsel, Mr. Mark A. Smith, Esq., Law Offices of Mark A.
Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20036 (202) 776-
0022.

_/s/_____

BARRY WIEGAND
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                                     )
**UNITED STATES OF AMERICA,**         )
                                                     )
                    **Plaintiff,**                   )
                                                     )
          **v.**                                     )          **Case No. 06-0212 (JR)**
                                                     )
**$225,444.14 in UNITED STATES**      )
          **CURRENCY,**                        )
                                                     )
                    **Defendant.**                )
———————————————————————)
     **FRANKLIN A. GLASCON &**       )
     **G. RENEE GLASCON**             )
                                                     )
                    **Claimants,**                  )
                                                     )
———————————————————————)

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

        With its motion to lift stay and for summary judgment, plaintiff respectfully submits this

statement of material facts as to which there is no genuine dispute, pursuant to Federal Rule of Civil

Procedure 56 and Local Civil Rules 7(h) and 56.1.

        1.        Except where noted otherwise specifically, all of the facts set forth below describe

events and practices between December 1, 2004, and July 27, 2005.

        2.        On July 27, 2005, a United States Magistrate Judge in the District of Columbia

issued a warrant to seize the "Funds in Industrial Bank, NA checking account number XXX481, up

to and including $445,170, held in the name of 'Stop and Shop Liquors'" (hereinafter, "S&S

Liquors"). See Seizure Warrant, Mag. No. 05-0419m-01 (D.D.C. July 27, 2005).[1]

_____

        [1] All statements of material facts as to which there is no genuine dispute are drawn from one
of two exhibits attached to this motion, plus claimants's answers to the complaint. The exhibits are
(1) an affidavit from Detective Phillip Robinson, a sworn officer of the Metropolitan Police

3.      Execution of this warrant on July 27, 2005, resulted in the seizure of $225,444.14 in funds from the S&S Liquors account with the Industrial Bank of Washington, NA ("IBW") in Washington, D.C.  These funds are the defendant *in rem* in this action.  <u>See</u> *Claimant G. Renee Glascon's Answer To Complaint For Forfeiture In Rem*, ¶ 4, 13 (hereinafter "*G. Renee Glascon's Answer*"); *Claimant Franklin A. Glascon's Answer To Complaint For Forfeiture In Rem*, ¶ 4, 13 (hereinafter "*Franklin A. Glascon's Answer*").

4.      Between December 1, 2004, and February 25, 2005, there were 39 separate deposits of exactly $10,000 in cash made into S&S Liquors's IBW account.  <u>See</u> *G. Renee Glascon's Answer* ¶ 7; *Franklin A. Glascon's Answer* ¶ 7; *Doyle Affidavit* pp. 3-4.  These were made on 39 separate dates.  <u>See</u> *Doyle Affidavit* pp. 3-4.  On December 24, 2004, two deposits of exactly $10,000 in cash were made into S&S Liquors's IBW account.  <u>Id</u>.  On December 31, 2004, two deposits of exactly $10,000 in cash were made into S&S Liquors's IBW account.  <u>Id</u>.  This is a total of 41 deposits of exactly $10,000 in cash.  <u>Id</u>.

5.      S&S Liquors was a commercial enterprise, which operated a retail store at an address in the 3000 block of Rhode Island Avenue, N.E., Washington, D.C.   <u>See</u> *Robinson Affidavit* ¶ 3. S&S Liquors engaged in the business of selling beverages, mostly liquor, tobacco, and lottery tickets

---

Department in Washington, D.C., which recounts statements made by claimants Franklin A. Glascon and Gail Renee Glascon; (2) a copy of the affidavit sworn in support of the application for a warrant to seize the defendant funds, as it appears in this Court's official electronic files for <u>*In the Matter of the Seizure of:* Funds in Industrial Bank, NA checking account number XXX481, up to and including $445,170, held in the name of "Stop and Shop Liquors"</u>, Mag. No. 05-0419m-01 (D.D.C. July 27, 2005).

The affidavit from Detective Robinson is hereafter referred to as "*Robinson Affidavit*."  The seizure warrant affidavit, which was sworn to by Special Agent John J. Doyle of the U.S. federal government's Immigration and Customs Enforcement ("ICE") bureau, is hereafter referred to as "*Doyle Affidavit*."

-2-

for profit.  Id.

6.    Between them, claimants Franklin A. Glascon, Sr., and G. Renee Glascon owned, controlled, and conducted S&S Liquors's business.  See *Robinson Affidavit* ¶¶ 2, 14, 24; *Claimant G. Renee Glascon's Answer*, pp. 2-3.  Because of Mr. Glascon's previous felony conviction, the store's license was in Mrs. Glascon's name, but she delegated the shop's management to him.  Id. Mr. Glascon ran S&S Liquors almost entirely by himself.  See *Robinson Affidavit* ¶ 24.  Mr. and Mrs. Glascon are married, and the store had very few employees.  Id. ¶¶ 2, 24

7.    On July 28, 2005, Mr. Glascon said that he had an undergraduate degree from Georgetown and a master's degree in accounting from Georgetown.  See *Robinson Affidavit* ¶ 7. Additionally, Mr. Glascon said that he had been employed as a loan review officer by the institution formerly known as Riggs Bank.  Id.

8.    On January 20, 2006, Mr. Glascon said that he had a bachelor's degree in American government from Georgetown, which he received in 1972.  See *Robinson Affidavit* ¶ 23.  Mr. Glascon also said that he is three credits shy of a master's degree in accounting, also from Georgetown.  Id.  Mr. Glascon also said that he had worked as an auditor for Price-Waterhouse, as a loan review officer for Riggs Bank, and as a systems analyst for the District of Columbia government.  Id.

9.    In September 1995 in the U.S. District Court for the District of Columbia, United States v. Franklin A. Glascon, Cr. No. 95-0087 (RCL), claimant Franklin Glascon was convicted of a felony criminal violation of 26 U.S.C. § 7201 for income tax evasion.

10.    In addition to working part-time at S&S Liquors's store, Mrs. Glascon was employed by the federal government.  See *Robinson Affidavit* ¶ 13.

11.    S&S Liquors maintained a business checking account at IBW, number XXX481, into which nearly all of its sales revenue was deposited.  See *Robinson Affidavit* ¶¶ 4, 6.

12.    The S&S Liquors store generated sales of between $40,000 and $60,000 per week, almost all of it cash.  See *Robinson Affidavit* ¶¶ 3, 6.  Because S&S Liquors's store took in so much cash, deposits into its IBW account had to be made almost daily.  Id. ¶ 6.  Mr. or Mrs. Glascon made these deposits.  Id. ¶¶ 4, 6, 16.

13.    Mr. Glascon knew that if an amount of cash in excess of $10,000 was deposited into S&S Liquors's IBW bank account in a single transaction, a written Currency Transaction Report (CTR) was required.  See *Robinson Affidavit* ¶¶ 6, 21.  Mrs. Glascon knew this, too.  Id. ¶¶ 12, 16.

14.    When the money to be deposited into S&S Liquors's IBW account was more than $10,000 in cash, Mr. Glascon bought money orders in a value equal to the amount of cash in excess of $10,000.  See *Robinson Affidavit* ¶¶ 6, 21.  After buying the money orders, Mr. Glascon then made a deposit into S&S Liquors's IBW bank account consisting of exactly $10,000 in cash and the money orders replacing the cash in excess of $10,000.  Id.

15.    According to Mr. Glascon, he bought money orders to replace the cash of more than $10,000 so that the cash deposit did not exceed $10,000.  See *Robinson Affidavit* ¶¶ 6, 21.  Mr. Glascon made sure that S&S Liquors's cash deposits did not exceed $10,000 because a cash deposit of more than $10,000 would require filing a CTR form, which he did not have the time for.  Id..

16.    To replace the surplus cash in excess of $10,000 for deposit into the IBW account, Mr. Glascon bought money orders totalling between $500 and $1000 in value at a time from a single location.  See *Robinson Affidavit* ¶ 8.  Sometimes, Mr. Glascon had to visit several places to buy enough money orders to replace the amount of cash in excess of $10,000 to be deposited into S&S

-4-

Liquors's IBW account.  <u>Id</u>.

17.    Mr. Glascon also told Mrs. Glascon not to deposit at one time more than $10,000 in cash into the S&S Liquors's IBW bank account.  <u>See</u> *Robinson Affidavit* ¶¶ 12, 16.  As a result, when Mrs. Glascon had more than $10,000 in cash to deposit into the bank on S&S Liquors's behalf, she bought money orders in a value equal to the amount of cash in excess of $10,000.  <u>Id</u>. ¶ 16. After buying the money orders, Mrs. Glascon then deposited into S&S Liquors's IBW account the resulting $10,000 in cash and the money orders replacing the cash in excess of $10,000.  <u>Id</u>.

18.    Law enforcement agents interviewed Mr. Glascon on July 28, 2005, Mrs. Glascon on August 2, 2005, and Mr. Glascon again on January 20, 2006, this last interview taking place in the presence of claimants's counsel, Mr. Mark Smith, Esq.  <u>See</u> *Robinson Affidavit* ¶¶ 1, 13, 20.

19.    Mr. Glascon knew that revenue from selling lottery tickets is supposed to be deposited into an account separate from the account into which is deposited revenue from selling the S&S Liquors's store's merchandise.  <u>See</u> *Robinson Affidavit* ¶ 4.

20.    No other party has filed a claim or pleading challenging the forfeiture of the defendant currency and the time for filing a claim has expired.  <u>See</u> 18 U.S.C. § 983(a)(4)(A).

> Respectfully submitted,
>
> _/s/ _____
> JEFFREY A. TAYLOR, D.C. Bar #498610
> United States Attorney
>
> _/s/_____
> WILLIAM R. COWDEN, D.C. Bar #426301
> Assistant United States Attorney
>
> _/s/_____
> BARRY WIEGAND, D.C. Bar #424288
> Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
              Plaintiff,                    )
                                            )
       v.                                   )       Case No. 06-0212 (JR)
                                            )
$225,444.14 in UNITED STATES                )
       CURRENCY,                            )
                                            )
              Defendant.                    )
_____)
      FRANKLIN A. GLASCON &                 )
      G. RENEE GLASCON                      )
                                            )
              Claimants,                    )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION TO LIFT STAY AND FOR SUMMARY JUDGMENT**

Plaintiff respectfully submits this memorandum in support of its motion to lift stay and for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 56.1 and 7(h). Based upon plaintiff's statement of material facts that are not in genuine dispute, summary judgment for forfeiture should be granted in plaintiff's favor as a matter of law.

## I. BACKGROUND

1.       This is a civil action *in rem* to forfeit to the U.S. government $225,444.14 seized on July 27, 2005, from a bank account held at the Industrial Bank of Washington, NA ("IBW"), number XXX481, in the name of Stop and Shop Liquors ("S&S Liquors"). S&S Liquors is a retail liquor store on Rhode Island Avenue, N.E., in Washington, D.C. Franklin A. Gascon and Gail Renee Glascon have filed claims in this action to oppose forfeiture of the defendant funds.

2.       Plaintiff United States filed this action on February 7, 2006, alleging that the

defendant funds were property involved in violations of Title 31, Sections 5324(a)(1) and 5324(a)(3). These sections make it a crime to cause or try to cause a bank to fail to file a Currency Transaction Report (CTR) and to structure cash deposits to evade the requirement to file a CTR, respectively. Between them 31 U.S.C. § 5313(a), and Title 31, Code of Federal Regulations, Part 103, require that a CTR be filed whenever a cash deposit of more than $10,000 is made at a U.S. bank. Property involved in a violation of 31 U.S.C. § 5313 is subject to civil forfeiture under 31 U.S.C. § 5317(c)(2).

3.      On March 7, 2006, claimants each filed a Statement of Interest in the funds, and both further filed on March 27, 2006, separate answers to plaintiff's forfeiture complaint. On April 10, 2006, claimant Franklin A. Glascon filed "Motion to Stay Civil Forfeiture Proceeding until Resolution of Related Criminal Investigation," citing 18 U.S.C. § 981(g)(2). Other criteria being met, this authorizes a stay when "continuation of the [civil] forfeiture proceeding will burden the right of the claimant against self-incrimination in the related [criminal] investigation or case." In his stay motion, Mr. Glascon asserted that "[c]ontinuation of the civil forfeiture proceeding will burden the right of Claimant against self-incrimination in the related criminal investigation because information obtained through the discovery process could potentially be used against Claimant in his criminal case." Without objection from the government at the time, the Court granted Claimant's stay motion two days later, and the case has remain stayed since then.

4.      Because the Court had granted Mr. Glascon's stay motion, no discovery has taken place. Even without discovery, however, plaintiff asserts that summary judgment in its favor is warranted because claimants have admitted that they structured cash deposits into S&S Liquors's IBW account in order to avoid filing CTRs. These admissions are set forth in an affidavit from a

police detective, which is one of the two exhibits attached to this memorandum.

5.    Because plaintiff is entitled to summary judgment on the existing record, this matter does not need discovery.  Therefore, lifting the stay to grant plaintiff's motion poses no threat to Mr. Glascon's right against self-incrimination.

## II.  GOVERNING CTR, STRUCTURING, AND FORFEITURE STATUTES

"Federal law requires financial institutions to file Currency Transaction Reports with the Secretary of the Treasury for cash transactions in excess of $10,000."  United States v. Wynn, 314 U.S. App. D.C. 35, 41, 61 F.3d  921, 927 (D.C. Cir.), cert. denied, 516 U.S. 1015 (1995).  In 1986, Congress explicitly prohibited persons from "structuring" cash transactions with banks so that no one transaction exceeds $10,000 in an effort to avoid CTR filings.  See United States v. McPherson, 424 F.3d 183, 188 (2d Cir. 2005) (citing 31 U.S.C. § 5324).[2]

---

[2]  Congress enacted this CTR reporting requirement in 1970 in the Currency and Foreign Transactions Report Act (CFTRA), Pub. L. No. 91-508, 84 Stat. 1118, also referred to as the "Bank Secrecy Act."  See United States v. McPherson, 424 F.3d 183, 188 (2d Cir. 2005).  The CTR requirement currently is codified at 31 U.S.C. § 5313(a) and implemented through regulations at 31 C.F.R. § 103.22(b)).  Id.

Title 31, U.S.C. § 5313, **Reports on domestic coins and currency transactions**, states:

> (a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount . . . the Secretary prescribes by regulation, the institution and any other participant in the transaction . . . shall file a report on the transaction . . . .

Federal regulations at 31 C.F.R. § 103.22(b), require each "financial institution other than a casino [to] file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000 . . . ."

Congress criminalized "structuring" and attempts to evade the CTR requirement in the Money Laundering Control Act, Pub. L. No. 99-570, 100 Stat. 3207.  See United States v. McPherson, supra, 424 F.3d at 188.  This has been codified at 31 U.S.C. § 5324.  **Structuring transactions to**

Such "structuring" is a violation of 32 U.S.C. § 5324(a)(3).   Similarly, causing or attempting to cause a bank to fail to file a required CTR violates § 5324(a)(1).   *"No criminal predicate as to the source of cash* in excess of $10,000" is needed to show a wilful failure to comply with the reporting requirement.  See United States v. McPherson, supra, 424 F.3d at 188 (emphasis supplied).

To prove a structuring violation, the evidence no longer need show that a "defendant acted with knowledge that his conduct was unlawful" as had been held in Ratzlaf v. United States, 510 U.S. 135, 137 (1994).   After Ratzlaf in 1994, Congress eliminated "wilfulness as an element necessary" to prove "structuring in violation of § 5324."   United States v. McPherson, supra, 424 F.3d at 189; see also United States v. Pang, 362 F.3d 1187, 1194-1195 (9th Cir.) (government need not prove that defendant knew structuring was illegal; it is sufficient to prove intent to evade the reporting requirement), cert. denied, 543 U.S. 943 (2004); United States v. Wynn, supra, 314 U.S. App. D.C. at 42, 61 F.3d at 928 (concluding that wilfulness is not an element of structuring offense following 1994 amendment to § 5324).[3]

---

**evade reporting requirement prohibited**, which states:

> (a) **Domestic coin and currency transactions involving financial institutions** - No person shall, for the purpose of evading the reporting requirements of  Sections 5313(a) . . .
> > (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) . . . or any regulation prescribed under [§5313(a)] . . . ;
> > (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

[3] Wynn noted that buying "money orders at three separate banks tends to prove knowledge of illegality" of structuring.  United States v. Wynn, supra, 314 U.S. App. D.C. at 42, 61 F.3d at 928 (citing United States v. Marder, 48 F.3d 564, 574 (1st Cir.), cert. denied, 514 U.S. 1056 (1995)).  Similarly, Wynn noted that "a defendant's scheme to enlist family members to purchase numerous money orders and cashier's checks in small denominations" had sustained a conviction for wilful

"Any property involved" in such violations of § 5324, and "any property traceable to any such violation . . . may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money-laundering cases . . . ." 31 U.S.C. § 5317(c)(2). The government may "obtain forfeiture of assets involved in a transaction that was illegally structured under § 5324 even when no individual" can be held criminal liable for the illegal transaction. United States v. Ahmad, 213 F.3d 805, 809 (4th Cir.) (even before Congress eliminated wilfulness element from criminal statute proscribing structuring, Congress had authorized civil forfeiture of structured funds without proof of wilfulness), cert. denied, 531 U.S. 1014 (2000).

When the government seeks to forfeit fungible property, such as funds in a bank account into which cash deposits have been structured, 18 U.S.C. § 984 authorizes forfeiture of "identical property found in the same place or account as the property involved" in the structuring or CTR reporting violation. See 18 U.S.C. § 984(a)(2). The Government need not "identify the specific property involved in the offense that is the basis for the forfeiture" when seeking to forfeit "funds deposited in an account in a financial institution" 18 U.S.C. § 984(a)(1)(A). Nor may claimants oppose a forfeiture because the "property involved in such an offense has been removed and replaced by identical property." 18 U.S.C. § 984(a)(1)(B).[4]

---

structuring. United States v. Wynn, supra, 314 U.S. App. D.C. at 42, 61 F.3d at 928 (citing United States v. Walker, 25 F.3d 540, 543, 548 n. 8 (7th Cir.), cert. denied, 513 U.S. 953 (1994).

[4] Subsection 984(b) sets an outer limit on the time to commence such a forfeiture, however. It requires that an action to seize and forfeit the fungible property take place within one year of the offense giving rise to the forfeiture of property involved in the offense. In claimants's case, the government met this one-year limitation. This action seeks to forfeit funds based on structured deposits first made on December 1, 2004, and lasting through February 25, 2005. Government agents seized the funds at issue on July 27, 2005, fewer than eight months after the first structured deposit at issue in this matter. Further, claimants have admitted that 39 deposits of exactly $10,000 in cash occurred between December 1, 2004, and February 25, 2005, a total of $390,000. See

To make out a structuring violation as a predicate for the forfeiture of the structured funds, the evidence must prove that: (1) someone engaged in the acts of structuring; (2) the person(s) must have done so with the knowledge that the bank involved was obligated to report cash deposits in excess of $10,000; and (3) the structurer must have acted with the intent to evade the CTR reporting requirement.  See United States v. McPherson, supra, 424 F.3d at 189.

## III.  CLAIMANTS HAVE ADMITTED THAT THEY STRUCTURED CASH DEPOSITS

By their own admissions, claimants have made clear that plaintiff is entitled to summary judgment.  Mr. Glascon told law enforcement agents "that in the past he had bought money orders to compensate for surplus cash, as to keep the cash deposits from exceeding $10,000" and Mr. Glascon "didn't want to deposit over $10,000 because that would require him to file a form (Currency Transaction Report), which he did not have the time to fill out."  See *Robinson Affidavit* ¶ 6; see also id. ¶ 21  (Mr. Glascon "would not exceed $10,000 because that would trigger a report").

Similarly, Mrs. Glascon said that it was her husband who told her never to deposit more than $10,000 in cash and she had, in the past, bought money orders to replace the cash, which would have to be deposited in excess of $10,000.  See *Robinson Affidavit* ¶ 16.  Mrs. Glascon admitted "that on the days which she made deposits, they were actually made by her, the deposit slips were filled out by her, but it was her husband, who told her never to deposit more than $10,000 in cash."  Id.

## IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment to be "granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

Claimants's Answers, ¶ 7; *Doyle Affidavit* pp. 3-4.  The defendant funds seized on July 27, 2005, $225,441.14, amount to less than the $390,000 figure.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action, not a disfavored procedural shortcut. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id, at 323-324.

The moving party is entitled to summary judgment "where the non-moving party has failed to make a sufficient showing on an essential element of [his or her] case to which [he or she] has the burden of proof." Id . at 323. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. Fed. R. Civ. P. 56(e).

The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Alexis v. District of Columbia, 44 F. Supp.2d 331, 337 (D.D.C. 1999); see also Celotex v. Catrett, supra, 477 U.S. at 323. When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that there actually is a genuine issue of material fact for trial. See Alexis v. District of Columbia, supra, 44 F. Supp.2d at 337. The opposing party must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail." Id. The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the

-7-

party will bear the burden of proof at trial.  <u>See</u> <u>Celotex</u> v. <u>Catrett</u>, <u>supra</u>, 477 U.S. at 322; <u>see also</u>

<u>Alexis</u> v. <u>District of Columbia</u>, <u>supra</u>, 44 F. Supp.2d at 337 ("Rule 56(c) *mandates* summary

judgment" in this circumstance) (emphasis added).

"A party may not create a *genuine* issue of fact by contradicting his own earlier statements,

at least [not] without a plausible explanation for the sudden change of heart."  <u>Cook</u> v. <u>Babbit</u>, 819

F. Supp. 1, 21 (D.D.C. 1993) (<u>quoting</u> <u>Richardson</u> v. <u>Bonas</u>, 860 F.2d 1427, 1433 (7th Cir. 1988))

(emphasis in original).  "While it is not the function of the court on summary judgment to weigh

evidence or determine credibility issues between different witnesses or parties, . . . the rejection of

statements that are implausible and contrary to other statements made *by the same person* is 'not a

credibility determination but rather [the] recognition of a sham issue.'" <u>Id</u>. (quoting <u>Camfield Tires,</u>

<u>Inc.</u> v. <u>Michelin Tire Corp.</u>, 719 F.2d 1361, 1365 (8th Cir. 1983)).

## V.  <u>CLAIMANTS'S AFFIRMATIVE DEFENSES LACK MERIT</u>

Claimants's answers raises two affirmative defenses, neither of which presents a genuinely

disputed material fact.  Both lack merit as a matter of law.

Both claimants first assert an "innocent owner defense."  Claimant Franklin A. Glascon

states that he "knew only that he was depositing amounts of cash that would allow him to avoid

spending more time at the bank."  *Claimant Franklin A. Glascon's Answer*, pp. 2-3.  Claimant G.

Renee Glascon acknowledges that she co-owns S&S Liquors with her husband, but asserts that she

"delegates management of the shop" to Mr. Glascon because she "works for the United States

Government during the day[.]"  *Claimant G. Renee Glascon's Answer*, page 2.  Therefore, Mrs.

Glascon avers that she "did not know when Mr. Glascon makes deposits or in what amounts[.]"  <u>Id</u>.

page 3.[5]

Mr. Glascon's statements in his affirmative defense defeat it.  Mr. Glascon has admitted making the deposits in a way that reduced the time he had to spend at a bank – in other words, Mr. Glascon acknowledges what he twice told law enforcement agents. See *Robinson Affidavit* ¶ 6. (Mr. Glascon said "that in the past he had bought money orders to compensate for surplus cash, as to keep the cash deposits from exceeding $10,000" and Mr. Glascon "didn't want to deposit over $10,000 because that would require him to file a form (Currency Transaction Report), which he did not have the time to fill out"); ¶ 21 (Mr. Glascon "would not exceed $10,000 because that would trigger a report").

To prevail in its forfeiture action as a matter of law, the government need not show that Mr. Glascon knew that structuring was unlawful, just that he structured his cash deposits to evade the

---

[5]  The "innocent-owner" defense is set forth in 18 U.S.C. § 983(d), which states:

> (1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.
>
> (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who-
>
>> (I) did not know of the conduct giving rise to forfeiture; or
>>
>> (ii) upon learning of the conduct giving rise to the forfeiture, did all that could reasonably be expected under the circumstances to terminate such use of the property.
>
> (B)(I) . . . ways in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person . . .
>
>> (I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and
>>
>> (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

requirement to file CTRs.  See United States v. McPherson, supra, 424 F.3d at 189; United States

v. Pang, supra, 362 F.3d at 1194-1195; United States v. Wynn, supra, 314 U.S. App. D.C. at 42, 61

F.3d at 928.  The statement in Mr. Glascon's *Answer* that he wished to save time at the bank is a

guarded, but effectual admission that the time he wished to save – by structuring his deposits to be

exactly $10,000 in cash, plus money orders for the surplus cash over $10,000 – would have been

spent on CTRs being made, if the deposits had been all cash.  In other words, Mr. Glascon has

admitted doing the *actus reus* with the required *mens rea* for structuring.  His affirmative defense

appears to be an effort to disavow any intent to avoid reporting taxable income, but, for purposes

of this structuring case, it has no import as a matter of law.[6]

Similarly, Ms. Glascon has admitted that she made deposits of exactly $10,000 in cash and

money orders and that she followed her husband's directions about structuring the deposits in this

---

[6] As is also the case with Mrs. Glascon, Mr. Glascon can hardly argue that he did not know of conduct he admitted doing himself.  See 18 U.S.C. § 983(d)(2)(A)(i) (innocent owner means an owner who "did not know of the conduct giving rise to the forfeiture").  Further, Mr. Glascon cannot properly argue that he meets the test of § 983(d)(2)(A)(ii), which grants innocent owner status to a person who "upon learning of the conduct giving rise to the forfeiture, did all that could reasonably be expected under the circumstances to terminate such use of the property."  Section 983(d)(2)(B)(I) defines "reasonably could be expected" to include giving "timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred . . . ."  18 U.S.C. § 983(d)(2)(B)(i)(I).  Mr. Glascon did nothing that could qualify as bringing his "structuring" conduct to the attention of a law enforcement agency. It was the law enforcement agents who first brought their knowledge of the structuring to the Glascons's attention by seizing the structured funds, not the other way around.

Mr. Glascon's cash-replacement habits ill-served his fear of misspent time.  To replace the surplus cash for deposit in excess of $10,000, Mr. Glascon bought money orders totalling no more than between $500 and $1000 from any single location.  See *Robinson Affidavit* ¶ 8.  Mr. Glascon sometimes had to visit several places to buy enough money orders to replace the cash in excess of $10,000 for deposit into S&S Liquors's IBW account.  Id.  It is hard to square Mr. Glascon's worry that completing CTRs "would consume too much time and cause him to be late opening his business." id. ¶ 21, with the time he spent going to multiple money-order stores to buy multiple cash-replacement money orders.

manner. <u>See</u> *Robinson Affidavit* ¶ 16 (Mrs. Glascon said that "it was her husband who told her never to deposit more than $10,000 in cash" and "she had, in the past, bought money orders to replace the cash, which would have to be deposited in excess of $10,000"). Mrs. Glascon also acknowledged "that on the days which she made deposits, they were actually made by her, the deposit slips were filled out by her, but it was her husband, who told her never to deposit more than $10,000 in cash." <u>Id</u>. Thus, Mrs. Glascon cannot aver that she did not know of conduct she admitted doing herself. <u>See</u> 18 U.D.C. § 983(d)(2)(ii) (innocent owner means an owner who "did not know of the conduct giving rise to the forfeiture"). As a result, Mrs. Glascon's first affirmative defense neither presents a genuinely disputed issue of fact nor raises a meritorious issue of law.

Both claimants also assert that the Eighth Amendment to the U.S. Constitution supplies an affirmative defense to the forfeiture of all of the funds seized from S&S Liquors's IBW account. In this view, the Eighth Amendment's prohibition of excessive fines precludes forfeiture of the full $225,444.14 in defendant funds. Claimants assert that full forfeiture would be "grossly disproportionate to the gravity of the offense." *Answers* at page three. Of course, there is not a single "offense" at issue in claimants's conduct, but rather at least 39 separate instances of structured deposits of exactly $10,000 in cash. <u>See</u> *Statement of Material Facts As To Which There Is No Genuine Dispute*, No. 4 (citing claimants's admissions in their *Answers*)

In any event, no decision from this Circuit holds in claimants's favor on this point. In <u>United States</u> v. <u>Ahmad</u>, <u>supra</u>, 213 F.3d at 811-819, the Fourth Circuit ruled that the burden is on the "party challenging the constitutionality of the forfeiture, to demonstrate its excessiveness." <u>Id</u>. at 816 (citing <u>United States</u> v. <u>Bajakajian</u>, 524 U.S. 321 (1998); (Kennedy, J., dissenting); <u>United States</u> v. <u>Ladum</u>, 141 F.3d 1328, 1349 (9th Cir.1998); <u>United States</u> v. <u>829 Calle de Madero</u>, 100 F.3d 734,

-11-

738 (10th Cir.1996); United States v. One 1970 36.9' Columbia Sailing Boat, 91 F.3d 1053, 1057 (8th Cir.1996)).

Further, Ahmad upheld the civil forfeiture of the entire sum of $85,000 directly traceable to the structuring of cash deposits to evade reporting requirements.  Id. at 817-818.  Ahmad concluded that, as a matter of law, the claimant could not prevail in an Excessive Fines analysis. In finding the forfeiture constitutional, Ahmad specifically noted that the structuring had occurred on a number of occasions, and was not the result of a single violation.  In this case, the Glascon claimants have acknowledged that they made deposits on 39 dates of precisely $10,000 in cash in a period of less than three months time.  Indeed, it appears that there were 41 separate deposits each of $10,000 exactly in cash (plus, the value of the additional money orders).  Cf. 18 U.S.C. § 5324(d)(2) (doubling criminal penalty for structuring if it involved a pattern of any illegal activity involving more than $100,000 in a 12-month period).  Each such structuring offense carried a maximum fine of $250,000 and a five-year term of imprisonment under 31 U.S.C. § 5324(d).[7]

Quite apart from the maximum statutory penalties, the U.S. Sentencing Commission Guidelines Manual ("U.S.S.G.") shows that forfeiture of $225,444.14 is not an excessive fine for conduct involving more than $400,000 in unlawfully structured deposits.  Under U.S.S.G. §

_____

[7] Ahmad noted that it was unclear whether an Excessive Fines analysis even applied either to an in rem civil forfeiture, such as the one now before this Court, or to any forfeiture, civil or criminal, of property constituting the instrumentality of the committing unlawful acts, such as structuring.  See United States v. Ahmad, supra, 213 F.3d at 814-819 (if forfeiture of funds traceable to deposit-structuring offense constituted forfeiture of offense's instrumentality, then 8th Amendment Excessiveness analysis does not apply).  Ahmad added that "there is certainly a respectable argument that [forfeiting funds] directly traceable to structuring offenses is an instrumentality forfeiture[.]" Id. at 815 (but ultimately holding that forfeiture did not violate 8th Amendment).  Thus, claimants's entire second affirmative defense could be moot in this case, which is both an in rem civil forfeiture and a forfeiture of the funds used to commit a string of deposit-structuring crimes, that is, an "instrumentality" forfeiture.

2S1.3(a)(2), violations of 31 U.S.C. § 5324 for structuring deposits of more than $400,000 carry a base offense level of 6 + 14 or 20. Because the structured deposits here exceeded $100,000 and the structuring was part of a pattern of unlawful activity occurring within 12 months, an additional two offense levels under U.S.S.G. § 2S1.3(b)(2) make the total offense level 22. Assuming a Category I criminal history for the "structurer," the guidelines recommend a term of imprisonment of 41-51 months (without acceptance of responsibility). Further, under U.S.S.G. § 8C2.4, an offense level of 22 gives rise to a fine of up to $1.2 million, and $500,000 for a level 19.[8]

Under these circumstances, either no Excessive Fines analysis applies to this type of forfeiture or, if such a Constitutional analysis obtains, then forfeiture of $225,444.14 is not grossly disproportionate to unlawful conduct that occurred 39 ore more separate times, running to $400,000 in structured deposits.

**WHEREFORE**, for the foregoing reasons, the plaintiff United States respectfully prays this Honorable Court to grant its motion for summary judgment in its favor on its Complaint for Forfeiture of the $225,444.14 in United States currency.

<div style="margin-left:40%">

Respectfully submitted,

_/s/ _____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

_/s/_____

</div>

---

[8] U.S.S.G. § 8C2.4 establishes the Base Fine guideline without regard to acceptance of responsibility. <u>See</u> Application Note 2.

BARRY WIEGAND, D.C. Bar #424288
Assistant United States Attorney

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

---

|   |   |   |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-0212 (JR)** |
| | ) | |
| **$225,444.14 in UNITED STATES** | ) | |
| **CURRENCY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **FRANKLIN A. GLASCON &** | ) | |
| **G. RENEE GLASCON** | ) | |
| | ) | |
| **Claimants,** | ) | |
| | ) | |

---

<div align="center">

**<u>ORDER</u>**

</div>

This matter came before the Court on the motion of the plaintiff United States to lift the stay now in effect in this action and for summary judgment in this *in rem* civil forfeiture action. This Court previously entered the stay under 18 U.S.C. § 982(g). Because the plaintiff's motion, supporting statement of uncontested facts, and the memorandum of points and authorities permit this Court to decide the summary judgment motion, for the reasons cited in the plaintiff's motion, its related pleadings, and attachments, in consideration of the entire record herein, it is by the Court this

_____ day of _____ 2007

ORDERED, that plaintiff's motion is granted in all respects, the stay hereby is vacated, and summary judgment is granted in plaintiff's favor.

<div align="center">

_____
JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

</div>