**AFFIDAVIT**

As affiant, I state that I am Detective Phillip Robinson, a sworn officer of the Metropolitan Police Department (MPD) in Washington, D.C. I make this affidavit, intending it to be a sworn statement under oath in contemplation of the penalty of perjury, in connection with a motion for summary judgment being filed by the plaintiff United States Government in the case of <u>United States</u> v. <u>$225,444.14 in U.S. Currency</u>, Civ. Act. 06-0212 (JR).

I have been a sworn police officer since 1989. I have been a detective since 1993, currently holding the rank of Detective, Grade One. I have been assigned to the financial investigations unit at MPD's Narcotics & Special Investigations Division (NSID), or its predecessors, since 1992.

I participated in the investigation leading to the seizure of funds in a bank account maintained at the Industrial Bank of Washington, NA ("IBW"), on behalf of an entity known as Stop-and-Shop Liquors ("S&S Liquors"), which runs a liquor store in Washington, D.C. Thereafter, I was present for interviews with Franklin A. Glascon, which took place on July 28, 2005, and January 20, 2006, and an interview with Gail R. Glascon, which took place on August 2, 2005. During these interviews, I heard the statements made by those present. A sworn special agent of the federal Immigration and Customs Enforcement ("ICE") bureau, John Doyle, also was at each interview.

This affidavit recounts statements by Mr. and Mrs. Glascon said during the interviews but does not include everything learned during the investigation of S&S Liquors's deposit-structuring and the Glascons. I state the following:

**Interview of Mr. Franklin A. Glascon, Sr., on July 28, 2005.**

    1.    On July 28, 2005, Agent John Doyle and I interviewed Mr. Franklin A. Glascon, Sr. This interview took place the day after the seizure of the funds in S&S Liquors's IBW account.

    2.    Mr. Glascon began the interview by telling agents that his wife is technically the owner of S&S Liquors and that its license is in her name. He identified his wife as Gail Renee Glascon. Mr. Glascon said that he is not named on any official paperwork concerning the business, but is the store's "operations manager."

    3.    Mr. Glascon stated that the business is a liquor store located at an address in the 3000 block of Rhode Island Avenue, N.E., Washington, D.C., at which 95% of sales are represented by liquor and 5% are tobacco and snacks. He also stated that the business grosses about $40,000 per week in liquors sales and an additional $15,000-$20,000 per week on lottery sales. Mr. Glascon receives 4-5% of the lottery sales from the District of Columbia. Mr. Glascon mentioned that about two-to-three months previously, another liquor store in the area went out of business. This led to an infusion of business to S&S Liquors.

    4.    Mr. Glascon told agents that he was operating the business out of one checking

account, although he was aware that he was supposed to have a separate account for revenue generated from lottery ticket sales.

5. Mr. Glascon told agents that cash sales for his business escalate respectively from Wednesday to Saturday and that "Power ball" occurs on Wednesday and Saturday, causing an additional increase in cash sales.

6. Mr. Glascon stated that the business has to make deposits almost every day and cash deposits of $10,000. He stated that in the past he had bought money orders to compensate for the surplus cash, as to keep the cash deposits from exceeding $10,000. He said that sometimes there would be cash left over that he would store at the business. He stated that he didn't want to deposit over $10,000 because that would require him to file a form (Currency Transaction Report), which he did not have the time to fill out. Additionally, he said that he had asked the bank for an exemption and the manager stated that he would have to establish a "history." He has not re-addressed the issue with the manager since.

7. Mr. Glascon told agents that he had an undergraduate degree from Georgetown and a Master's degree in Accounting from Georgetown. Additionally, Mr. Glascon stated that he previously had worked as a loan review officer at Riggs Bank.

8. Mr. Glascon said that he has stopped buying money orders to replace surplus cash. He said that he would buy $500-$1000 per store, sometimes having to visit several stores in order to procure enough. This became a safety issue because he was afraid of getting robbed while buying money orders. He said he did this approximately eight-to-ten times. Mr. Glascon also stated, when asked about it, that he didn't think that depositing cash over $10,000 would eventually establish the "history" that the bank manager had mentioned previously.

9. The D.C. lottery commission deducts its share of the revenue automatically from the account once a week. Mr. Glascon believes that he deposits somewhere between $40,000 and $60,000 cash per week. When Mr. Glascon was asked why he didn't make fewer, but larger deposits per week for the sake of time conservation, he said he did not know why he didn't do so. Mr. Glascon also told agents that he has received notification from Industrial bank that they no longer wish to conduct business with him and he needs to close his account.

10. Mr. Glascon said that he uses IBW's Rhode Island Avenue branch 95% of the time. He only uses other branches in the case of technical problems at the Rhode Island Avenue branch. Mr. Glascon gave the interviewers a list of employees and their wages. His son performs the full array of duties at the store and is paid $600 per week for this. Mr. Glascon identified three other persons as employees by name who are paid $6.50-$7.00 per hour. Everybody is paid in cash. His wife, Renee, is the owner, according to Mr. Glascon. Mr. Glascon stated that he makes $50,000-$60,000 per year from the business and contributes approximately $75,000 per year to the household income.

11.     Mr. Glascon told agents that he was arrested in 1994 by the IRS and pled guilty in 1995 for tax evasion in 1992-1994. Glascon spent nine months incarcerated for the offense. Mr. Glascon also stated that he owned Jefferson Liquors before S&S Liquors.

12.     Mr. Glascon told agents that his wife was aware of the deposits having to be kept from exceeding $10,000 and that she was aware that it was for the purposes of saving time.

**Interview of Mrs. Gail Renee Glascon on August 2, 2005.**

13.     On August 2, 2005, Agent John Doyle, another agent, and I interviewed Mrs. Gail Renee Glascon. Mrs. Glascon is the wife of Franklin Glascon, Sr., and an authorized signer on the S&S Liquors's IBW account.

14.     Mrs. Glascon said she has been involved with the business for about eight years and that she is the owner of the business. She has an understanding with her husband that he is running the business. She stated the business is in her name because of her husband's previous felony conviction for tax evasion. Mrs. Glascon said that it was her husband's idea to open the business.

15.     Mrs. Glascon stated that her business sells liquor and lottery tickets. Mr. Glascon's son works there with his father, in addition to a nephew, and three ladies.

16.     Mrs. Glascon stated that on the days which she made deposits, they were actually made by her, the deposit slips were filled out by her, but it was her husband who told her never to deposit more than $10,000 in cash. She stated that she had, in the past, bought money orders to replace the cash, which would have to be deposited in excess of $10,000. This was done when the lottery revenue was high.

17.     Mrs. Glascon informed agents that she had additional bank accounts at a federal credit union. She attributed recent "large" deposits into her personal accounts to gambling winnings in Atlantic City, New Jersey.

18.     Mrs. Glascon stated that she understood that her husband had pled guilty to tax evasion while he was the owner of Jefferson Liquors. She stated that she is unaware of what or how her employees are paid.

19.     Mrs. Glascon estimated that her husband and she gross a household income of $150,000-$200,000 per year. The bank recently told her that the business account would have to be closed. This occurred approximately one week before this interview.

**Interview of Mr. Franklin A. Glascon, Sr., on January 20, 2006.**

20.     On January 20, 2006, at about 3:00 p.m., a meeting was held at the U.S. Attorney's Office in Washington, D.C. In addition to Mr. Franklin A. Glascon, Sr., I was present at this

meeting, along Special Agent Doyle, a federal Internal Revenue Service ("IRS") agent, three Assistant U.S. Attorneys, and Mr. Glascon's attorney, Mr. Mark Smith, Esq.

21. During this meeting, Mr. Glascon stated that he would make cash deposits into the bank consisting of $10,000. He would not exceed $10,000 because that would trigger a report, which would consume too much time and cause him to be late opening his business. Mr. Glascon stated that the liquor store would generate $7,000-$8,000 in cash on Mondays and Tuesdays, and this increased over the course of the week.

22. When asked, for the sake of time, why he did not make fewer but larger deposits, Mr. Glascon responded by saying that he did not think of that at the time, but it would probably have been a good idea, in hindsight.

23. Mr. Glascon stated that he had a bachelor's degree in American government from Georgetown, which he received in 1972. He is also three credits shy of a master's degree in accounting, also from Georgetown. He also worked for two years for Price-Waterhouse as an auditor. He also worked for Riggs Bank as a loan review officer and the D.C. Government as a systems analyst. He has operated S&S Liquors, incorporated as GRG Liquors, since 1998. The license is held in his wife's name because one cannot obtain a license within 10 years of a felony conviction. He had planned on adding his name to the license after 10 years had passed.

24. When asked about his payroll system and the reasons for not paying his employees through a legitimate payroll system, Mr. Glascon stated that he has very few employees and runs the business almost entirely by himself. Additionally, he stated that every dollar he has to pay out to an employee is a dollar out of his pocket.

Further than this, affiant sayeth not.

I, Phillip Robinson, a sworn officer of the Metropolitan Police Department in Washington, D.C., declare under penalty of perjury as provided by Title 28, United States Code, Section 1746, that the foregoing Affidavit is based upon information furnished to me or known by me and that everything contained therein is true and correct to the best of my knowledge and belief.

Executed on this 29th day of August 2007.

Phillip Robinson
Detective, Grade One
Metropolitan Police Department

SWORN AND SUBSCRIBED before me this 29th day of August, 2007, in the District of Columbia.

Notary Public
My commission expires:

Jessica McCormick
Notary of Public
District of Columbia
Commission Expires: December 14, 2011

-4-