**Affidavit in Support of Application for Seizure Warrant**

I, John Doyle, after being duly sworn, depose and state as follows:

1. I am a special agent with the U.S. Immigration and Customs Enforcement (ICE) and have been so employed for approximately 4 years. Prior to my current employment, I was employed as a Police Officer with the United States Capitol Police for approximately 3 years. My primary duties as an ICE special agent include the investigation of the proceeds of illegal activities, specifically money laundering violations of 18 U.S.C. §§ 1956 and 1957, as well as reporting violations of 18 U.S.C. § 1960 and 31 U.S.C. §§ 5316, 5324, and 5330. I am currently assigned to the High Intensity Drug Trafficking Task Force in Annandale, Virginia on a project to investigate possible structuring violations. In the past year this task force has applied for and executed approximately 50 seizure warrants for bank accounts involved in structuring of monies.

2. This affidavit supports an application for a seizure warrant for all monies, up to $445,170, that is contained in account number #xx9481, in the name of Stop and Shop Liquors, at Industrial Bank, NA, xxxxxxxxxxxxxxxxxxxxxxxxxx, Washington, DC 20011. Probable cause exists to believe that such monies are subject to seizure and forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2) (incorporating 18 U.S.C. §§ 981 and 984), because the monies constitute property involved in, or traceable to deposits structured to evade currency reporting requirements, in violation of 31 U.S.C. Section 5324(a).

### I. Currency Transaction Reports and Structuring

3. Title 31, United States Code, Section 5313 and 31 C.F.R. Part 103 of the Bank Secrecy Act (BSA) require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 to report the transaction to the Internal Revenue Service on Form 4789, which is known as a Currency Transaction Report ("CTR"). These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are conducted by, or on behalf of, the same person, and they result in either currency received or disbursed by the financial institution totaling more than $10,000 during any one business day.

4. CTRs are often used by law enforcement personnel to uncover a wide variety of illegal activities including narcotics trafficking, tax evasion, terrorist financing and money laundering. Many individuals involved in these illegal activities are aware of such reporting requirements and take active steps to cause financial institutions not to file CTRs. These active steps are often referred to as "smurfing" or "structuring" and involve, among other methods, making multiple cash deposits, in amounts less than $10,000, to multiple banks and/or branches of the same bank on the same day or on consecutive days. "Structuring" is prohibited by 31 U.S.C. § 5324(a)(3).

5. In order to establish the crime of "structuring" transactions to evade reporting requirements, the Government must prove that, for the purposes of evading the reporting requirements of Section 5313(a) or any regulation prescribed under any such Section, the subject structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions in amounts less than $10,000.

## II. Stop and Shop Liquors Structure in $445,170 in Cash Deposits

6. Within the past 45 days, I obtained and reviewed records maintained by Industrial Bank, NA regarding a Stop and Shop Liquors' account. Those records reflect that account #xx9481 was opened on February 23, 1998. The account appears to exist as a business account in the name of Stop and Shop Liquors. The accounting branch is the Rhode Island Office.

7. The Industrial Bank, NA records for account #xx9481 were reviewed for the period of December 1, 2004 through February 25, 2005. Those records indicate that there were 39 separate cash deposits of $10,000 made on separate, but often consecutive days between the aforementioned dates. In addition to those deposits, two $10,000 cash deposits were made on December 24, 2004 at different times and two $10,000 cash deposits were made on December 31, 2004 at different times. Further, there were also three deposits made on consecutive days on February 2, 3, and 4, totaling $15,170.

8. The following is a brief analysis of the $445,170 in cash deposits made to the Stop and Shop Liquors account #xx9481 at Industrial Bank, NA branch locations:

| Date | Cash Amount | Time |
|---|---|---|
| December 1, 2004 | $10,000 | 9:18 am |
| December 3, 2004 | $10,000 | 1:42 pm |
| December 4, 2004 | $10,000 | 12:18 pm |
| December 7, 2004 | $10,000 | 9:51 am |
| December 8, 2004 | $10,000 | 9:53 am |
| December 9, 2004 | $10,000 | Unknown |
| December 10, 2004 | $10,000 | 2:20 pm |
| December 13, 2004 | $10,000 | Unknown |
| December 16, 2004 | $10,000 | 10:07 am |
| December 18, 2004 | $10,000 | 12:34 pm |
| December 21, 2004 | $10,000 | 9:47 am |
| December 22, 2004 | $10,000 | 9:47 am |
| December 23. 2004 | $10,000 | 12:01 pm |
| December 24, 2004 | $10,000 | 12:06 pm |

| | | |
|---|---|---|
| December 24, 2004 | $10,000 | 1:48 pm |
| December 28, 2004 | $10,000 | 10:05 pm |
| December 29, 2004 | $10,000 | Unknown |
| December 30, 2004 | $10,000 | 3:11 pm |
| December 31. 2004 | $10,000 | 10:00 am |
| December 31, 2004 | $10,000 | 2:02 pm |
| January 4, 2005 | $10,000 | Unknown |
| January 6, 2005 | $10,000 | Unknown |
| January 7, 2005 | $10,000 | 3:20 pm |
| January 8, 2005 | $10,000 | 11:41 am |
| January 12, 2005 | $10,000 | 9:57 am |
| January 14, 2005 | $10,000 | 2:42 pm |
| January 15, 2005 | $10,000 | 12:30 pm |
| January 19, 2005 | $10,000 | Unknown |
| January 21, 2005 | $10,000 | 12:34 pm |
| January 24, 2005 | $10,000 | Unknown |
| January 26, 2005 | $10,000 | 10:03 am |
| February 1, 2005 | $10,000 | 10:01 am |
| February 2, 2005 | $7,800 | 2:23 pm |
| February 3, 2005 | $4,500 | 2:48 pm |
| February 4, 2005 | $2,870 | Unknown |
| February 7, 2005 | $10,000 | Unknown |
| February 9, 2005 | $10,000 | 9:25 am |
| February 11, 2005 | $10,000 | 2:59 pm |
| February 14, 2005 | $10,000 | Unknown |
| February 17, 2005 | $10,000 | 2:29 pm |
| February 18, 2005 | $10,000 | 3:10 pm |
| February 19, 2005 | $10,000 | 12:29 pm |
| February 23, 2005 | $10,000 | 9:53 am |
| February 25, 2005 | $10,000 | 2:19 pm |
| Total | **$445,170** | |

9. Based on my education, training, and experience, I know that the pattern of making deposits on consecutive days for a total of $445,170 without a single deposit exceeding $10,000 is highly indicative of an attempt to evade the CTR filing requirement by artificially keeping the deposits from exceeding $10,000. It simply defies credibility to believe that these cash deposits could have all been made in the manner, without the intent to evade the CTR filing threshold.

10. Based on my education, training, and experience, I know that individuals who

4

acquire cash in the course of their retail trade or business, such as Stop and Shop Liquors, often make significant cash deposits into their bank accounts. However, in the vast majority of circumstances, the deposits made for legitimate reasons do not consist of round numbers such as $8,500, $9,000, $9,500, or $10,000. Rather, individuals who routinely acquire and deposit cash in their legitimate trade or business generally deposit different amounts of cash that are not "even" amounts, but are rather "odd" amounts such as $3,455.12, $5,440.37, or $6,888.20.

11. Based on my education, training and experience, I also know that, when individuals who do not routinely make cash deposits actually make multiple cash deposits of amounts such as $7,000, $8,500, $9,000, $9,500, or $10,000 over a short period of time, they often are breaking a larger amount of money into separate deposits of amounts less than $10,000 to avoid triggering the filing of a currency transaction report. In short, when they do this, they are engaging in "structuring".

12. Based on the above facts and circumstances of this case, in light of my education, training, and experience, it is my opinion that Stop and Shop Liquors did not deposit all the cash it had when it actually acquired the cash. Rather, Stop and Shop Liquors acquired a sum of cash at one time, and then broke the cash up into amounts not greater than $10,000, so that it would not trigger the filing of a CTR. As such, Stop and Shop Liquors is engaging in illegal "structuring".

### III.    Applicable Forfeiture Principles

13. I am advised that 31 U.S.C. § 5317(c)(2) provides in pertinent part for the forfeiture of "a property involved in a violation of Sections 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or

5

conspiracy," and that such property shall be forfeited civilly in accordance with the procedures of 18 U.S.C. § 981(a)(1)(A).

14. I am advised that, in a civil forfeiture case, the Government has the initial burden of showing probable cause to believe that a substantial connection exists between the property and the criminal activity (in this case, violations of the currency transaction reporting requirements of 31 U.S.C. § 5324(a)). United States v. One 1987 Mercedes Benz 300E, 820 F. Supp. 248, 251 (E.D. Va. 1993). I am further advised that "probable cause" means simply a reasonable ground for belief that goes beyond mere suspicion but need not amount to prima facie proof. Id. at 251-52. This standard requires Courts to make a practical, common sense decision whether, given all the circumstances, a fair probability exists that the property to be forfeited was involved in, or the subject of, a transaction violating Section 5324. Id. See also United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990).

15. I am further advised that, pursuant to 31 U.S.C. 5317 (and 18 U.S.C. § 981), civil forfeiture is triggered by the structuring of cash deposits in violation of 31 U.S.C. § 5324, and that, as the Supreme Court has noted, "willfulness" is not an element of a civil forfeiture action for property involved in a structuring violation. United States v. Ratzlaf, 510 U.S. 135, 146 n.16 (1994). Thus, for purposes of seizure of the Stop and Shop Liquors account at Industrial Bank, NA, it is immaterial whether the structuring was accomplished *willfully* because willfulness is not an element of a civil forfeiture case. Accordingly, this affidavit need only show probable cause that cash deposits into the Stop and Shop Liquors account in excess of $10,000 were divided into amounts of less than $10,000 for deposit, in such a manner so as to avoid detection and to avoid the triggering the filing of CTRs.

6

16. I am advised that, in pertinent part, 18 U.S.C. 984(b) provides:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution -
>
>     (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>
>     (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

17. I am advised that, in essence, Section 984 allows the United States to seize for civil forfeiture identical ("fungible") property found in the same place where the "guilty" property had been kept. See United States v. All Funds Presently on Deposit at American Express Bank, 832 F. Supp. 542, 558 (E.D.N.Y. 1993). Thus, in this case, the monies currently in the Stop and Shop Liquors account at Industrial Bank, NA need not be the particular monies involved in structuring, so long as the forfeiture is sought for other (fungible) funds on deposit in the Stop and Shop Liquors account.

18. I am further advised that the "fungibility" rule of Section 984 cannot reach back in time for an unlimited period. Section 984(b) provides:

> No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

I am advised that, thus, Section 984 applies so long as the "action" to forfeit the property is commenced within one year from the date of the offense that provides the basis for the forfeiture. Here, as established above, the dates of the offenses giving rise to the seizure began

on, at the very least, December 1, 2004. As a result an action to forfeit is properly commenced on or before December 1, 2005.

    19. I am advised that, while Section 984 does not explicitly define the term "action," the Section's legislative history indicated Congress intended the seizure of property to constitute the "action" to be commenced within one year of the offense in order to obtain the benefit of the application of that section's fungibility rule:

> Sec. 984 provides that in cases involving fungible property, property is subject to forfeiture if it is identical to otherwise forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated **by seizing the property or filing the complaint**, regardless of whether or not the fungible property was continuously present or available between the time it became forfeitable and the time it was seized.

Money Laundering Enforcement Amendments of 1991, H.R. Rep. No. 102-28 (Mar. 20, 1991), 1991 WL 42201 (emphasis added). See United States v. American Express Bank, 832 F. Supp. 542 (E.D. NY 1993) (quoting legislative history to the effect that Section 984 applies to money in seized accounts to the extent that money involved in money laundering or structuring existed in those accounts within one year of the **seizure**).

8

**Conclusion**

20. Thus, because Section 984 makes the property currently in the Stop and Shop Liquors account at Industrial Bank, NA today subject to seizure and forfeiture to the extent that monies involved in structuring were located in the account in the year preceding the seizure, and because in this case, as established above by the Industrial Bank, NA records referenced in this Affidavit, $445,170 in cash was deposited into Stop and Shop Liquors' account, through structured amounts of $10,000 or less, between December 1, 2004 and February 25, 2005, and because probable cause exists that these deposits were the result of illegal "structuring", the monies and other things of value contained in the Stop and Shop Liquors account #xx9481 at Industrial Bank, NA, up to $445,170.00, are currently subject to seizure and forfeiture as property involved in, or traceable to, violations of 31 U.S.C. § 5324.

                                                  John Doyle
                                                  Special Agent
                                                  ICE

Subscribed to and sworn before me on this _____ day of July 2005.

                                                  UNITED STATES MAGISTRATE JUDGE