UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>　　　　　**Plaintiff,**<br><br>v.<br><br>**$225,444.14 in UNITED STATES CURRENCY**<br>　　　　　**Defendant.**<br><br>**FRANKLIN A. GLASCON &**<br>**G. RENEE GLASCON**<br><br>**Claimants,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 06-0212(JR)<br>)<br>)<br>)<br>) |

**CLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY AND FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Claimants, Franklin A. Glascon and G. Renee Glascon, by and through their attorney, Mark A. Smith, respectfully oppose Plaintiff's Motion to Lift Stay and For Summary Judgment. The court's stay should not be lifted, because that course of action would not preserve Claimants' rights against self-incrimination and excessive fines. In addition, if this Court were to lift the stay, there are genuine issues of material facts that militate against a grant of summary judgment in this matter.

### THE STAY SHOULD REMAIN IN PLACE

On May 11th 2007, this Court told the government, for the second time, either legitimately to bring a criminal charge against Mr. Glascon by Labor Day or this Court would

turn over the seized funds to counsel for claimant to deliver to him.  At that time, the Court denied the government's request to lift the stay.  How does it make sense to grant that same request now after the government has again[1] defied this Court's clear directive and pursued a course that suits its agenda?

The Court has already stayed the civil proceedings in the case to protect the claimants' 5th and 8th Amendment rights.  Should the court deny this motion, the status quo will be preserved.  District courts often stay civil proceedings, absent extraordinary circumstances, until the resolution of related criminal proceedings.  See generally United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896 (1992).  Court's have warned that in civil forfeiture cases, "the government [has] increasing and virtually unchecked use of civil forfeiture statutes [and] … disregard[s] … due process." Id.  In All Assets, the court expressly urged that great discretion be used in lifting civil stays, "in order to preserve some modicum of due process to criminal defendants."  971 F.3d at 905-06.  Here the government has equally powerful tools to utilize a civil forfeiture statute that could jeopardize the Glascons' rights to due process and against self-incrimination.  The government's decision to forego discovery at this juncture does not militate against the danger of claimants' incriminating themselves through further discovery should the court deny summary judgment.  To lift the stay would chill the Glascons' use of civil discovery for fear of the government's abuse of any statements made in future proceedings against them during a criminal trial.

Moreover, to lift this Court's stay and permit summary judgment would offend the Excessive Fines Clause of the 8th Amendment, because forfeiture of the claimant's $225,444.14

---

[1] On February 28, 2007, this Court issued an Order which read "[t]he government is advised that, if no criminal prosecution related to the currency at issue in this case has been commenced within 90 days of the date of this order, this forfeiture proceeding will be dismissed the funds ordered returned to the account from which they were seized."

in addition to any potential criminal penalties would be disproportionate to the gravity of the alleged offense. The forfeiture of currency, in violation of a statute that requires a person to report currency is punishment and consequently constitutes a fine within the scope of the Excessive Fines Clause. U.S.C.A. Const. Amend. 8. See United States v. Bajakajian, 514 U.S. 321, 321-22 (1998). The purpose of the Excessive Fines Clause is to limit, "the Government's power to extract payments, whether in cash or in kind, as punishment for some offense." Id. Forfeiture payments are "fines" if they constitute punishment for an offense. Id. In Bajakajian, the controlling authority addressing the Excessive Fines Clause, the court considered the forfeiture of $ 347,144.00 a fine where the statute in question permitted forfeiture in addition to the imposition of a criminal sentence. 514 U.S. at 321-22.

The Supreme Court found that that a punitive forfeiture violates the 8th Amendment if it is grossly disproportional to the gravity of the offense that the statute in question is designed to punish. Id. In Bajakajian the court applied this test to Title 31 U.S.C. § 5316(a)(1)(A), which forbids the transfer of currency over $10,000.00 without reporting. 514 U.S. at 322-34. The statute permitted the court to "order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Bajakajian, 321 U.S. at 326 (citing 18 U.S.C. § 982(a)(1)).

The Supreme Court found that the forfeiture of respondent's entire $347,000.00 was grossly disproportional to the seriousness of his offense. Id. at 323. The opinion was largely based on the fact that the crime in question was solely a reporting offense and that it was unrelated to any other illegal activities. Id. Moreover, the court reasoned that forfeiture offended the 8th Amendment since the offender did not fit into the class of persons the statute was enacted to punish, nor was the public deprived of any funds. Id.

The factors used in Bajakajian, to determine if a fine is excessive are directly applicable to the case *sub judice*. 514 U.S. 321. Here the government is attempting to seize almost a quarter-million dollars because the claimants allegedly evaded a reporting requirement. The government contends that it possesses the power to impose up to 1.2 million dollars in fines in addition to a prison sentence exceeding four years. See *Plaintiff's Motion to Lift Stay and For Summary Judgment* at P. 13 (Henceforth "*Motion to Lift Stay*"). Ironically, the United States cites Bajakajian, to rebut counsel's argument that the cumulative effect of ruling in the government's favor would breach the 8th Amendment. See *Motion to Lift Stay* at P. 11. Yet, the government fails to compare the present facts to the guiding reasoning in Bajakjian. 514 U.S. at 322-24

As in the Bajakajian the allegations leveled against Mr. Glascon are far from the class of persons that, the relevant statute Title 31 U.S.C.A § 5324, was meant to punish. See S. Rep. No. 99-443, pp 1-2 (1986). The legislature, enacted § 5324, to "provide law enforcement agencies with additional tools to investigate [and] curb the spread of money laundering by which criminals successfully disguise the nature and source of funds from their illegal enterprises." S. Rep. No. 99-443, pp.1-2 (1986). The claimants' were not charged with, or involved with money laundering. Indeed, the government has expressly stated that there is no evidence to construe claimants are involved with any ancillary crimes. The only offense at play is the structuring charge. The Bajakajian court's policy rationale that the charges did not harm the public, highlight the cogency of denying the government's motion. 514 U.S. at 323 (stating that the harm that [Bajakajian] caused was minimal … [as] there was no fraud on the government and no loss on the public fisc.). Similarly, Mr. Glascon has not defrauded the government, because he, "declared through the federal income tax filings of the

business, as revenues to [his] business for the relevant tax years." See Exhibit 1: *Affidavitt of Frankin A. Glascon* at ¶ 6. Moreover, any public harm done by Mr. Glascon is negligible at best. Mr. Glascon's failure to fill out Currency Transaction Reports would only mean that the bank did report $225,444.14 , not that the sum had gone unreported. This behavior hardly damages the public akin to the money laundering schemes § 5324 was designed to thwart. See S. Rep. No. 99-443, pp.1-2 (1986), *supra*. The factors weighed by the Supreme Court in Bajakajian, are directly analogous to the present case. 514 U.S. at 323.

The court has already stayed these proceedings in order to protect the claimants' Constitutional rights. Mr. Glascon met the stay elements outlined in Title 18 § 981 (g) (2).[2] That the government currently seeks summary judgment does not preclude the danger of future discovery requests. Moreover, the Glascons will certainly serve the government with discovery requests, and to lift the stay before the conclusion of the related criminal matter would chill such requests for fear of providing the government with statements or strategies they would use later. Finally, forfeiture of the Glascons' legitimately earned income would be grossly disproportionate to the gravity of the alleged offense, especially if it was based upon the paper record; and in addition to criminal sanctions. Therefore, the court should stay these proceedings until the resolution of the related criminal proceedings to uphold the Glascons' rights against self-incrimination and excessive fines.

---

[2] Title 18 U.S.C.A. § 981(g)(1) **Civil Forfeiture**
   (g)(2) Upon motion of the claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that –
      **(A)** the claimant is the subject of a related criminal investigation or case;
      **(B)** the claimant has standing to assert a claim in the civil forfeiture proceeding; and (g)(2) Upon motion of the claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that –
      **(A)** the claimant is the subject of a related criminal investigation or case;
      **(B)** the claimant has standing to assert a claim in the civil forfeiture proceeding; and
      **(C)** continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

## I.  BACKGROUND

1. Legal proceedings involving Mr. and Mrs. Glascon began on July 27, 2005, when law enforcement officials executed a warrant to seize funds from a bank account allegedly used to evade currency transactions held at the Industrial Bank of Washington, NA ("IBW"), account number XXX481, in the name of Stop and Shop Liquors ("S&S").

2. On February 7, 2006, the United States (henceforth "the government.") filed the above-captioned action, alleging that the claimants' funds were property involved in violation of Title 31, Sections 5324(a)(1) and 5324(a)3.[3]

3. On March 7, 2006, claimants each filed a Statement of Interest in the funds, and on March 27, 2006, filed separate answers to the government's forfeiture complaints.  On April 10, 2006, Mr. Glascon filed a "*Motion to Stay Civil Forfeiture Proceeding until Resolution of Related Criminal Investigations*," (Henceforth "*Motion to Stay*") pursuant to 18 U.S.C. § 981(g)(2), because continuation of the forfeiture proceedings would undermine his right against self-incrimination in the related criminal investigation against him.  The court granted Mr. Glascon's motion without opposition from the government.

5. On August 28, 2007, the government filed its *Motion to Lift Stay*."  The government contends that, "[b]ased upon plaintiff's statement of material facts that are not in genuine dispute, summary judgment for forfeiture should be granted in plaintiff's favor as a matter of law," pursuant to Federal Rule of Procedure 56 and Local Rules 56.1 and 7(h).  See *Motion to Lift Stay* at P. 1.  According to the government, the Court should lift the stay and grant

---

[3] Title 31 U.S.C.A. § 5324
   **(a)** No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, or recordkeeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508.

summary judgment, because the claimants have allegedly admitted their guilt. Id. The government purports to support its motion with two affidavits taken from completely interested law enforcement officials. The government does not have statements from either of the Glascons. It has characterizations of things they may have, or may not have, actually stated. They have the interpretations of words ascribed to claimants, which are, in fact, the words of the officers who executed the affidavits. They are inherently unreliable representations of the words of another, and should be treated with intelligent suspicion and doubt. Specifically, the government's argument is based on the following words of detective Robinson, "in the past [Mr. Glascon] had bought money orders to compensate for surplus cash, as to keep the cash deposits from exceeding $10,000 and Mr. Glascon didn't want to deposit over $10,000 because that would require him to fill out a form (Currency Transaction Report), which he did not have time to fill out." See *Motion to Lift Stay* (citing *Robinson Affidavit* ¶ 6 and ¶21). The government contends that such sworn statements by law enforcement officers, not the claimants, justify the lifting of the court's stay and summary judgment. That is a specious contention.

## II.    GOVERNING AUTHORITY FOR STRUCTURING FINANCIAL TRANSACTIONS

The Bank Secrecy Act requires domestic financial institutions to file currency transaction reports ("CTR Reports") with the Internal Revenue Service for any cash transaction exceeding $10,000.00. 31 U.S.C. § 5313; 31 C.F.R. § 103.22.[4] Title 31 U.S.C.A. § 5324 criminalizes

---

[4] "Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through or to such financial institution which involves a transaction in currency of more than $10,000, except as provided by this section."

attempting to evade the CTR requirements of the Bank Secrecy Act.[5]  In 1986, Congress prohibited the practice of "structuring,"[6] cash transactions with banks so that no one transaction exceeds $10,000.00 in order to evade CTR filings.  See United States v. MacPherson, 424 F.3d 183, 188 (2d Cir. 2005) (citing 31 U.S.C. § 5324).  Importantly, Congress enacted 31 U.S.C. § 5324, to "provide law enforcement agencies with additional tools to investigate [and] curb the spread of money laundering by which criminals successfully disguise the nature and source of funds from their illegal enterprises."  See S. Rep. No. 99-443, pp.1-2 (1986).

In order to find a defendant guilty of structuring, the government is required to prove the following elements: (1) that the accused engaged in the act of structuring; (2) that the accused did so with knowledge that the bank involved was legally obligated to report cash deposits in excess of $10,000; and (3) that the accused acted with the intent to evade the CTR reporting requirements.  See United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005).  See also United States v. Simon, 85 F.3d 906, 909 at n.3 (2d Cir. 1996) *citing* United States v. Scanio, 900 F.2d 485 (2d Cir. 1990) (establishing that the government must prove both the defendant's knowledge and intent in order to satisfy its burden in a structuring case).

Prior to a 1994 amendment to 31 U.S.C. § 5324, "willfulness" was an element necessary to prove a "structuring violation."  The Supreme Court found that the "willful" requirement contained in § 5324(a)(3) required proof that the defendant: (1) knew of the relevant reporting

---

[5] Title 31 U.S.C.A. § 5324
  **(a)** No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, or recordkeeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508

[6] 31 C.F.R. § 103.11 (gg) defines " structuring" , in pertinent part, as follows:
[A] person structures a transaction, if that person...conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purposes of evading the reporting requirements under section 103.22 of this Part. "In any manner" includes but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000....."

requirements; (2) structured the transaction for the purpose of evading those reporting requirements; and (3) acted with the knowledge that his conduct was unlawful. See Ratzlaf v. United States, 510 U.S. 135, 136-38 (1994). In Ratzlaf, the defendant was convicted in a lower court of structuring in violation of §5324(a)(3). 510 U.S. at 136-38. The evidence at trial established that the defendant, Ratzlaf attempted to repay a portion of a gambling debt to a casino with $100,000.00 in cash. Id. A casino employee informed Ratzlaf that he was required to report any transactions above $10,000.00 to federal authorities; however, he would accept cashier's checks for $10,000.00 without reporting. Ratzlaf, at 136-38. Ratzlaf returned with separate cashier's checks all under $10,000.00 Id. At trial, Ratzlaf admitted that that he purposely purchased the cashier's checks to avoid currency reporting requirements. Id. at 140. The Supreme Court reversed Ratzlaf's conviction, holding that the government must prove the "willful" requirement. Id. at 136.

In the wake of Ratzlaf, Congress amended 31 U.S.C. § 5322(a) to eliminate the "willfulness" requirement for structuring prosecutions under 31 U.S.C. § 5324(a)(3). The "knowledge" and "intent" requirements remain as necessary elements of the crime. Courts' interpret § 5324 as requiring the government, to prove beyond a reasonable doubt that the defendant: (1) engaged in acts of structuring; (2) did so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) acted with intent to evade that reporting requirement. See United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005). See also United States v. Gabel, 85 F.3d 1217 (7th Cir. 1996) (holding that to prove structuring, the government must show that the defendant knew of the relevant currency reporting requirements, that defendant structured the transaction for the purpose of evading those reporting requirements, and that defendant acted with knowledge that

such conduct was unlawful).

In MacPherson, the court found that the elements of knowledge and intent turn on questions of fact that are properly resolved for a jury. 424 F.3d at 190. In MacPherson, the court affirmed defendant's conviction in a jury trial for structuring a quarter-million dollars into thirty-two separate cash transactions, each less than $10,000.00 in violation of 31 U.S.C. § 5324(a)(3). 424 F.3d at 190. There, a bank manager testified that she had actually helped the defendant fill out CTR forms unrelated to the structured deposits. MacPherson, at 182. Evidence also showed a pattern of deposits consistent with "structuring." Id. 190-95. From the evidence presented at trial, the court permitted the jury's inference that the defendant had the necessary intent to sustain a conviction under § 5324. Id. at 187-95. Importantly, the MacPherson court expressly instructed that it is "the task of the jury, not the court, to choose among competing inferences" of guilt or innocence. 424 F.3d at 189. Evidence of motive, or the lack thereof, is an element that the jury may weigh in consideration of the circumstances which permit an inference of knowledge and intent. Id. at 185.

Again, to sustain a conviction under Title 31 § 5324, the government must prove three elements beyond a reasonable doubt: (1) the act of structuring; (2) defendant's knowledge of the financial institution's obligation to report currency transactions in excess of $10,000.00; and (3) defendant's intent to evade that reporting requirement. MacPherson at 190. Most importantly, MacPherson establishes that the latter two elements may be proven by inference, but those are questions that are the purview of a jury. 424 F.3d at 190

### III.  GOVERNING AUTHORITY FOR GRANTING SUMMARY JUDGMENT FOR CIVIL FORFEITURES

Rule 56(e) of the Federal Rules of Civil Procedure permits a court to order summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that (1) there is no genuine issue as to any material fact; and (2) the moving party is entitled to a judgment as a matter of law. If there are any genuine issues of material fact, those issues should be resolved at trial rather than on the paper record. A genuine dispute about a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty, Inc., 477 U.S. 242, 248 (1986). It is well-settled that the moving party always bears the burden of identifying those portions of the evidence before the court which it claims demonstrate the absence of genuine issue of material. Celotex v. Catrett, 477 U.S. 317 (1996). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. Liscio v. Warren, 901 F.2d 9, 11 (2d Cir. 1986).

Summary judgment is a scarcely used remedy in matters where motive and intent are central to the outcome of a case. Poller v. Columbia Broadcasting System, 368 U.S. 464. The Supreme Court warns that intent and motive can rarely be gleaned from the record. Id. As Justice Clark wrote in this oft-cited case of financial crime, "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury so long has been the hallmark of even handed justice." Id.

The adjudication of a case by the record imports a high risk of injustice where the act itself, such as structuring, is not a crime. See U.S. v. Wynn, 61 F.3d 921, (D.C. Cir. 1995). See also U.S. v. Simon, 85 F.3d 906 (2d Cir. 1996). In structuring cases, funds ought not be forfeited through summary judgment, unless the government can prove that "no question of fact exists as

to whether or not, and to what extent, the funds [in question] represent fruits of an illegal structuring transaction to evade filing requirements." See United States v. All Funds On Deposit, 767 F.Supp. 36, 40 (1991). In the All Funds case, the defendant was accused of structuring financial transactions and charged with conspiracy illegally to transfer funds in violation of Section 5324. 767 F. Supp. at 40. After initiating criminal proceedings, the government filed a complaint seeking the forfeiture of all allegedly structured funds. Id. at 38. Shortly after, the government moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Id. The government's primary basis for seeking summary judgment was the defendant's pattern of deposits, which were consistently deposited in amounts less than $10,000.00 coupled with his admission that he had actually made the deposits. Id. at 40. The court refused to grant the government's motion for summary judgment since the defendant's pattern of deposits alone did not preclude all questions of fact required to obtain forfeiture. Id. Notably, in consideration of the case before this Court, the All Funds court found that questions of fact existed as to whether the defendant actually made the allegedly incriminating statements the government cited in support of its motion for summary judgment. 767 F. Supp. at 40. In a criminal trial the jury may infer the requisite intent from evidence, such as deposit patterns, to convict a defendant under §5324. See MacPherson, at 190. If a question of fact exists, however, as to any of the elements required under § 5324, the government should not prevail on a motion for summary judgment. See All Funds, at 40.

## IV. THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT

In the matter sub judice, numerous questions of material fact remain in dispute, which claimants are entitled to have decided by a jury. The government has not proven, based upon the record before the Court that Claimants knew of the bank's legal obligation to make CTRs or that they attempted to evade those requirements. Moreover, the Claimants have "admitted" nothing that permits summary judgment. The government's motion is replete with disputable allegations, as they have no sworn or even signed statements from claimants. The government cannot prove all of the elements it agrees are necessary to keep the Glascon's money without crucial, actual admissions from the Glascons, which it does not have. See *Motion to Lift Stay* at P. 6 (citing the "MacPherson"). To prevail upon summary judgment the government must prove, on the basis of the paper record that, (1) the Claimants have engaged in acts of structuring; (2) that they did so with knowledge that the financial institution involved was legally obligated to report currency transactions in excess of $10,000.00; and (3) that they structured their transactions with the intent to evade that requirement. See MacPherson, at 189.

The government claims that it has met this burden based upon two pieces of evidence: the Claimants' deposit patterns and the affidavits of two law-enforcement officers in which the words of the Glascons are characterized.[7]

First, Mr. Glascon had no knowledge that his bank was legally obligated to report currency transactions in excess of $10,000.00, nor the intent to evade CTR reports. See Exhibit 1 at ¶ 3-7. Mr. Glascon has stated that he, "believed they [CTR Reports] were the bank's own internal, administrative requirements, not legal duties … [and that he] sought to save time, not frustrate the bank's legal requirements." Id. at ¶ 4-5. Moreover, Mr. Glascon was ignorant of any obligations the bank had to report relevant deposits to the IRS. Furthermore, Mr. Glascon declared the deposits on the federal income for the business of the years relevant to the deposits

---

[7] Government Motion To Lift Stay at P 6. (stating "Claimants Have Admitted That They Structured Cash Deposits)

at issue in this case. Exhibit 1 at ¶ 6. Far from the government's contention that the Glascons have admitted their guilt; the government has proved nothing except that police officers have interpreted the Glascon's statements to support the government's allegations.

The government's contends that its characterization of Mrs. Glascon's supposed words somehow support summary judgment is equally dubious. Mrs. Glascon, has already disputed the government's allegations. See *Renee Glascon Answer To Complaint For Forfeiture In Rem* (March 27, 2006)**.** The government purports that Mrs. Glascon stated "her husband told her never to deposit more than $10,000.00 in cash and she had, in the past, bought money orders to replace the cash, which would have to be deposited in excess of $10,000." See *Motion to Lift Stay* at P. 6 (citing *Robinson Affidavit* ¶ 16). Mrs. Glascon stated in her Answer that she "does not know when Mr. Glascon makes deposits or in what amounts; she was therefore wholly unaware of patterns of Mr. Glascon's deposits." Id. at P. 2, ¶ 1. Moreover, Mr. Glascon has substantiated Mrs. Glascon's statement that she is unaware of his deposit patterns. Mr. Glascon states, "[m]y wife was also unaware of any legal reporting requirements of the bank; in fact, she didn't fully comprehend even what I construed as an administrative requirement. From time to time, I would simply give her an amount and instruct her to deposit it. But I made 90% of all deposits." See Exhibit 1 at ¶ 9.

The government claims that the claimants' defense "lacks merit" and that "[t]o prevail in its forfeiture action as a matter of law, the government need not show that Mr. Glascon knew that structuring was unlawful, just that he structured his cash deposits to evade the requirement to file CTR's." See *Government Motion* at P. 8. Rather, as the government concedes, it must prove that the Mr. Glascon attempted to structure his cash deposits with knowledge that his bank was

legally obligated to report currency transactions in excess of $10,000.00 and that he had the intent to evade those specific requirements.  See Id. at 6 (citing "MacPherson").

The government has not presented any evidence that proves Mr. Glascon knew that his bank was legally obligated to make CTR reports.  The government has only alleged that Mr. Glascon stated that "he didn't want to deposit over $10,000 because that would require him to fill out a form (Currency Transaction Report), which he did not have the time to fill out" and that "he would not exceed $10,000.00 because that would trigger a report."  See *Government Motion* at P 9.  The government's affidavit shows only that Mr. Glascon sought efficiency in his business transactions rather than taking steps to evade filling out a "CTR" form.

Further, it is not enough to show that the defendant engaged in activity that is consistent with illegal "structuring," without submitting additional evidence to prove his intent to evade the bank's legal obligation to report.  See MacPherson, at 189; See also U.S. v. Ismail, 97 F.3d 50 (1996) (holding that evidence of structuring alone cannot provide the basis for inference that defendant was attempting to evade the bank's CTR requirements).  The government has only shown that Mr. Glascon wanted to avoid filling out a bank form to save time.  The government's proffer of the deposits along with his statement alone, are not enough to show Mr. Glascon's knowledge and intent.  The government's inferences are speculation, and are not sufficient grounds for granting summary judgment in its favor.

Even assuming, arguendo, that Mr. Glascon made the statement exactly as reported by the government, it has still failed to prove that he evaded filling out a CTR form, "with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000.00"  See MacPherson, at 189.  The government's motion does not address how Mr. Glascon would know that his bank was obligated to submit CTR reports.

Presumably the government's statements about Mr. Glascon's employment as a loan officer back in the 80s in fashioned to pump assumptions about his knowledge of internal bank functions. But there is in fact no evidence that Mr. Glascon had such knowledge. Even if Mr. Glascon stated that he did not want to fill out a "Currency Transaction Report," such a statement would only show that he was aware that his bank utilized reports so named, not that "the financial institution [was legally] obligated to report currency transactions in excess of $10,000." Banks are legally obligated to submit CTR's to the IRS pursuant to the Bank Secrecy Act. See Title 31 U.S.C. § 5313: 31 C.F.R. § 103.22(b), *supra*. In order to convict Mr. Glascon of structuring under § 5324, the government would have to show that he had specific knowledge of the bank's obligation to report deposits over $10,000.00 to the IRS and that he purposely attempted to evade that requirement. See MacPherson at 189. Far from evading such a requirement, Mr. Glascon has reported his earnings to the Internal Revenue Service directly. See Exhibit 1 at ¶ 7. In light of this fact, it is excessive and peculiar to contend that Mr. Glascon was attempting to evade the bank reporting requirement when he fulfilled that requirement directly.

The government's case against Mr. Glascon does not warrant the seizure of his legitimately earned income at all, but certainly not on the basis of the paper record alone. The government's request for summary judgment is analogous to that of United States v. All Funds On Deposit, 767 F.Supp. 36 (1991). Here, as in All Funds, the government is invoking summary judgment based upon the defendant's alleged statements as well as his pattern of deposits. 767 F. Supp. at 40. The facts in All Funds showed that the claimant's statements to police, and the reasoning behind his pattern of deposits, were in dispute. 767 F.3d at 40-42. The court denied summary judgment, holding that questions of fact existed as to whether the claimant actually made the alleged incriminating statements. Id. Here, the government's motion treats its

opinions as conclusions as conclusions of law and seeks to circumvent Mr. Glascon's right to submit his case to a jury. Yet Mr. Glascon's putative statements and the purpose behind the pattern of his deposits are in dispute. Therefore, this Court should deny the government's motion for summary judgment, as did the court in the All Funds case. 767 F.3d at 40. Summary judgment is particularly inappropriate, as this case is related to a criminal investigation and turns on factual issues of motive and intent. All Funds at 40. See generally Poller v. Columbia Broadcasting System, 368 U.S. 464 (1962). In cases such as these where motive and intent play a central role, the court should resist concluding "what the truth is" on the basis of a mere paper record. See Poller, at 473. This court should permit a jury to resolve the disputed material facts in this case, not a cabal of prosecutors and law enforcement personnel.

## VI.   CONCLUSION

WHEREFORE, for all the reasons stated above, claimants respectfully request that the Court deny the government's Motion to Lift Stay and for Summary Judgment.

Respectfully Submitted,

LAW OFFICE OF MARK A. SMITH, LLC

By:_____/s/_____
Law Office of Mark A. Smith, LLC
Mark A. Smith
D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.
Suite 100
Washington, D.C. 20036
(202) 776-0022
*Counsel for Claimants*

Case 1:06-cv-00212-JR   Document 22   Filed 10/10/2007   Page 18 of 19

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of September 2007, a copy of (1) Claimant's Opposition to Plaintiff's Motion To Lift Stay And For Summary Judgment has been served by means of the Court's ECF system to United States counsel, Mr. Jeffrey A. Taylor, Esq., Assistant United States Attorney, 555 Fourth Street, N.W., fourth floor, Washington, D.C. 20530 (202) 776-0022.

_____/s/_____

Mark A. Smith