CITY OF WASHINGTON  )
                                    ) s.s.
DISTRICT OF COLUMBIA)

### AFFIDAVIT OF FRANKLIN A. GLASCON

I, FRANKLIN A. GLASCON, being duly sworn according to the law, depose and say:

1.      I am 58 years of age.

2.      I reside in Fort Washington, Maryland.

3.      When I made the deposits that are the subject of the forfeiture action associated with funds from Stop and Shop Liquors I did not know that the bank was legally required to provide the information to the IRS.

4.      I did know that the bank required them of me, but I believed they were the bank's own internal, administrative requirements, not legal duties.

5.      I sought to save time, not to frustrate the bank's legal requirements, again, because I was unaware of the bank's legal duties. I was simply a small business seeking to save time and get back to managing my business.

6.      In fact, I reasoned to myself that I could not be doing anything other than something that was an administrative inconvenience to the bank, because every dime of the money that I supposedly structured would be, and has been, declared through the federal income tax filings of the business, as revenues to my business for the relevant tax years. A review of the store's tax filings would confirm this.

7.      The $10,000.00 threshold was established subsequent to a conversation that I had with the bank manager in the fall of 2004. I requested that the bank relieve me of any obligation to fill out a report. The bank manager never informed me that the report was required by the government. I was left with the impression that this was an internal bank requirement. During our conversation I was told that the waiver could be accomplished if the business established a pattern of deposits of $10,000.00 or more. I limited the cash deposits to $10,000.00 for the same reason that I buy money orders: security consciousness and to protect the revenues. I'd rather walk down the street with only $10,000.00 and not "more."

8.      Money orders were primarily purchased on Fridays and Saturdays in order to minimize the amount of cash left in the store over the weekend. These money orders were immediately made out to the store to prevent them from being negotiated by another party. All money orders were typically immediately deposited on the first banking day

after their purchase. I felt it prudent and necessary to convert the store's cash into money orders because of the store's location in a high crime area of the District of Columbia. The purchase of the money orders was designed to protect the store's revenues. The loss of thousands of dollars could potentially put the store out of business. Stolen money orders that have been made payable to the store cannot be negotiated by another. With the proper documentation, these money orders (unlike cash) are recoverable in full from the money order companies. The money order receipt, which I detached immediately from each money order, is the documentation needed.

9. My wife was also completely unaware of any legal reporting requirements of the bank; in fact, she didn't fully comprehend even what I construed as an administrative requirement. From time to time, I would simply give her an amount and instruct her to deposit it. But I made 90% percent of all deposits.

WASHINGTON, DC: TO WIT:ss

I HEREBY CERTIFY that on this __10th__ day of October, 2007 before me the subscriber, a Notary Public of the District of Columbia, personally appeared the affiant, Franklin A. Glascon, and made oath in due form of law that the matters and facts set forth in the foregoing Affidavit are true to the affiant's personal knowledge.

_____
Franklin A. Glascon

As witness my hand and notarial seal.

_____
Notary Public

The foregoing document was acknowledge before me this __10th__ day of __October 2007__
Jude U. Nkpado, Notary Public
My Commission Expires July 31, 2010

2