UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>            Plaintiff,        )<br>                              )<br>        v.                    )<br>                              )<br>$225,444.14 IN UNITED STATES )<br>      CURRENCY,               )<br>            Defendant.        )<br>_____)<br>                              )<br>FRANKLIN A. GLASCON &         )<br>G. RENEE GLASCON,             )<br>            Claimants.        )<br>_____) | Civil Action No. 06-0212 (JR)<br>ECF |

### PLAINTIFF'S REPLY TO CLAIMANTS' OPPOSITION
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*COMES NOW*, plaintiff United States of America, by and through its attorney, the United States Attorney for the District of Columbia, to reply to Claimants' Opposition To Plaintiff's Motion To Lift Stay And For Summary Judgment. In furtherance whereof, plaintiff submits as follows:

### BACKGROUND

1.     This is a civil action *in rem* to forfeit funds seized from a liquor store's bank account in Washington, D.C., in July 2005. The complaint, filed February 7, 2006, alleged that the defendant funds should be forfeited because of deposits into the bank account made some 40 or more times in amounts of precisely $10,000 in cash – in violation of federal "anti-structuring" laws at 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3). This subjected the money to forfeiture under 31 U.S.C. § 5317(c)(2).

2.     Federal anti-structuring laws require that a Currency Transaction Report (CTR) be filed whenever a cash deposit of more than $10,000 is made at a U.S. bank. See 31 U.S.C. § 5313(a), and 31 C.F.R. Part 103. Title 31, U.S. Code §§ 5324(a)(1) and 5324(a)(3) make it unlawful (1) to cause or try to cause a bank to fail to file a CTR; and, (2) to structure cash deposits to evade the

requirement to file a CTR, respectively.

3.   In April 2006, claimants G. Renee Glascon and Franklin A. Glascon entered this case to oppose the forfeiture. Between them, the Glascons own and operate "Stop and Shop Liquors" (hereinafter, "S&S Liquors"), the liquor store from whose account the defendant funds had been seized. Almost immediately thereafter, claimants moved for a stay, which the Court granted, and this remains in effect. There are no other parties to the case, and it is too late for anyone else to enter it.

4.   On August 28, 2006, the government moved to lift the stay and for summary judgment, which claimants opposed in a pleading filed on October 10, 2007. Supporting the Motion for Summary Judgment were 20 separate assertions of material facts as to which there is no genuine dispute. Chief among them was Mr. Glascon's acknowledgments that he regularly and deliberately structured S&S Liquors's deposits so that they consisted of exactly $10,000 in cash, plus money orders, which he bought specifically to replace the store's cash revenues when they exceeded $10,000. See Plaintiff's Motion To Lift Stay And For Summary Judgment, Statement Of Material Facts As To Which There Is No Genuine Dispute, ¶¶ 15-17. Similarly, Mr. Glascon also told Mrs. Glascon not to deposit at one time more than $10,000 in cash into the S&S Liquors bank account, so she, too, deposited into that account precisely $10,000 in cash, plus money orders replacing the cash in excess of $10,000. Id.

5.   Claimants' opposition to the government's Motion for Summary Judgment included a section headlined, "There Are Genuine Issues Of Material Fact That Preclude Summary Judgment" and appended Mr. Glascon's affidavit – but, it omitted any other "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . ." LCvR 7(h); see also Fed. R. Civ. P. 56(e). In such cases, courts may

treat the facts proffered in support of summary judgment as conceded. In this case, however, the Court need not concern itself with the many uncontested facts put forward by the government: the facts in Mr. Glascon's affidavit, standing alone, suffice to support summary judgment in this case.[1]

## ARGUMENT

6. In opposing summary judgment, claimants confirmed (through Mr. Glascon's affidavit) that they made many deposits of precisely $10,000 in cash, plus money orders for the cash of more than $10,000. See Affidavit of Franklin A. Glascon ¶7 ("I limited the cash deposits to $10,000 for the same reason that I buy money orders . . . ."). In short, claimants confirmed the existence of structuring. In their opposition, claimants urge that they still should be permitted to explain to a jury that Mr. Glascon did not know about the CTR reporting requirement when he structured store's cash deposits, or that he had no nefarious intent to cheat the IRS. But Mr. Glascon's affidavit disproves the former, and the latter is irrelevant. In his affidavit, Mr. Glascon swears that he and his wife established their $10,000 cash deposit threshold – "subsequent to a conversation that I had with the bank manager in the fall of 2004" when Mr. Glascon had "requested

---

[1] Claimants's opposition did not include an affidavit from Mrs. Glascon, and statements in Mr. Glascon's affidavit about Mrs. Glascon's knowledge or intent cannot be regarded as proper or competent – much less admissible – proof of either. LCvR 7(h) requires that an opposition to a summary judgment motion be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." Cf. Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the *mere allegations or denials* of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial*.") (emphases added). Consequently, this Court may deem the government's statement of material facts in this regard to have been conceded, as LCvR 7(h) permits. See Twist v. Meese, 272 U.S. App. D.C. 204, 206-207, 854 F.2d 1421, 1423-1424 (1988); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 322 U.S. App. D.C. 35, 41, 101 F.3d 145, 151 (1996); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

that the bank relieve me of any obligation to fill out a report." Id. ¶7. In other words, Mr. Glascon admits that he knew of a reporting requirement before his wife and he began structuring their deposits. At the same time – in the very same affidavit – Mr. Glascon admits that he began structuring cash deposits in amounts of $10,000 to avoid having the report filled out because he wanted "to save time[.]" Id. ¶5. Mr. Glascon has proven the government's case.

7.   Claimants advance three legal arguments in opposition to summary judgment: (1) the stay should not be dissolved because forfeiture of all the defendant funds would be an unconstitutionally excessive fine; (2) the defendant funds can only be forfeited if claimants actually knew of the specific federal CTR law in Title 31, of which the Glascons claim ignorance; and, (3) actual disputes over material facts of knowledge and intent preclude granting summary judgment. Each argument lacks merit.

8.   First, the question of an unconstitutional excessive fine presupposes that forfeiture is proper, but asserts instead that a specific amount of forfeiture is too great. Claimants's argument challenges not whether, but how much. An excessive fine contention, meritorious or not, argues only in mitigation of forfeiture, not in opposition to it. Thus, claimants's 8th Amendment analysis logically either concedes that forfeiture is proper, or it is premature and moot.[2]

9.   Second, Mr. Glascon's affidavit confirms both his knowledge and intent to structure

---

[2] Nor do claimants's arguments establish that full forfeiture is an excessive fine. See United States v. Ahmad, 213 F.3d 805, 816 (4th Cir.) (burden is on the "party challenging the constitutionality of the forfeiture, to demonstrate its excessiveness."), cert. denied, 531 U.S. 1014 (2000). Claimants also have failed to refute specifically that forfeiture is not excessive when the structuring occurred 39 times within three months. See 31 U.S.C. § 5324(d)(2) (doubling criminal penalty for structuring if it involved a pattern of any illegal activity involving more than $100,000 in a 12-month period); 31 U.S.C. § 5324(d) (each structuring offense carries maximum fine of $250,000 and five-year term of imprisonment); U.S. Sentencing Commission Guidelines Manual § 2S1.3(a)(2) & § 8C2.4, which recommend 41-51 months in prison fine of up to $1.2 million.

S&S Liquors's cash deposits so that the bank would not generate reports about them, effectually conceding the government's earlier assertions of material facts as to which there is no genuine dispute. Although the affidavit can be read to conjure up a quibble over Mr. Glascon's rationale for structuring the store's deposits – which is not material – the affidavit nevertheless makes clear both that Mr. Glascon knew that the bank made reports about cash deposits of more than $10,000, and that Mr. Glascon structured the liquor store's deposits to be $10,000 in cash, plus replacement money orders, so the bank would not generate such reports. This is the substance of the government's statement of undisputed material facts.

10. Third, claimants's opposition fails properly to identify or articulate genuinely disputed material facts that warrant expending the Court's resources on a trial. Summary judgment is the proper, and favored, vehicle to sort out legal disputes short of trial in civil cases whenever this can be done. Invoking talismanic assertions about factual issues of intent or knowledge is not, by itself, enough to throw a purely legal decision at a jury panel. Merely framing an issue in terms of disputed intent or knowledge should not obscure the Court's view of the complete picture. The picture shows that claimants structured their banking deposits of cash – more than 40 times – so that the bank would not make reports of cash deposits of more than $10,000. Therefore, the defendant funds are subject to forfeiture as a matter of law.

### *Mr. Glascon's Affidavit Does Not Create Genuine Issues of Disputed Material Fact*

11. In the affidavit submitted with claimants's opposition to the government's summary judgment motion, Mr. Glascon makes at least three statements showing that he had the necessary knowledge and intent when he structured the liquor store's revenue deposits to be precisely $10,000 in cash and an amount of money orders that replaced the cash revenues in excess of $10,000 – more

than 40 times between December 2004 and March 2005. See Plaintiff's Motion To Lift Stay And For Summary Judgment, Statement Of Material Facts As To Which There Is No Genuine Dispute, ¶ 4 (citing *G. Renee Glascon's Answer*, ¶ 4, 13; *Franklin A. Glascon's Answer*, ¶ 4, 13).[3]

12.    First, Mr. Glascon states: "I did know that the bank required them of me, but I believed they were the bank's own internal, administrative requirements, not legal duties." Glascon Affidavit ¶ 4 (quoted entirely). The word "them" has to refer to reports that the bank was required to generate if S&S Liquors's deposits contained more than $10,000 in cash. In context, "them" cannot mean anything else.[4]

13.    Second, Mr. Glascon states: "The $10,000 threshold was established subsequent to a conversation that I had with the bank manager in the fall of 2004. I requested that the bank relieve me of any obligation to fill out a report. The bank manager never informed me that the report was required by the government. I limited the cash deposits to $10,000 for the same reason that I buy money orders . . . ." Glascon Affidavit ¶ 7.

14.    Third, Mr. Glascon states: "I sought to save time, not to frustrate the bank's legal requirements, again, because I was unaware of the bank's legal duties." Glascon Affidavit ¶ 7.

---

[3] No where does claimants's opposition dispute that nearly 40 of S&S Liquors's revenue deposits consisted of precisely $10,000 in cash and accompanying cash-replacement money orders, nor that one or the other of the Glascons made such deposits some 40 times in three months. Indeed, Mr. Glascon's affidavit admits the former to be true. See Glascon Affidavit ¶ 7 (I limited the cash deposits to $10,000 . . . .").

[4] Actually, the pronoun "them" has no clear antecedent. The preceding paragraph in the affidavit states: "When I made the deposits that are the subject of the forfeiture action associated with funds from Stop and Shop Liquors I did not know that the bank was legally required to provide the information to the IRS." Id. ¶ 3. The only plural nouns for which "them" could be a pronoun are "deposits" and "funds," and that reading of the paragraph renders it senseless. Thus, "them" must refer to reports which Mr. Glascon acknowledges that "the bank required . . . of me" id. ¶ 4.

15.     This Court should not accept these paragraphs as creating genuine issues of disputed material facts. To do so would confuse: (1) intent with nefarious motivation; and (2) knowledge of a reporting requirement with mastery of its minutest details. Neither is sufficient to frustrate the government's motion for summary judgment.[5]

16.     As claimants acknowledge, the three elements of a violation of the anti-structuring law in 31 U.S.C. § 5324 are: "(1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement." United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005) (citing United States v. Scanio, 900 F.2d 485, 491 (2d Cir. 1990); 3 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions: Criminal,* Instruction 50B-21 (2004)).[6]

17.     Mr. Glascon's affidavit concedes that the acts of structuring took place, but tries to dispute knowledge and intent. The effort fails, however. Nothing in MacPherson or any other authority requires proof that Mr. Glascon had mastered citations by Title and Section to the U.S.

---

[5] Given Mr. Glascon's education, prior employment, and earlier experience with the Internal Revenue Service, blithe denials of nefarious motivation to evade are hard to credit – even if it this were relevant – which it is not. But, when reviewing a motion for summary judgment, this Court must draw all inferences in favour of the non-moving party. That does not mean, however, that the Court is forbidden to scrutinize carefully the assertions that Mr. Glascon has made in his affidavit. In their opposition pleading, claimants do not dispute that Mr. Glascon has said that he had very nearly completed a master's degree in accounting from Georgetown and that he had been employed as a loan review officer by Riggs Bank, an auditor for Price-Waterhouse, and a systems analyst for the District of Columbia government. Plaintiff's Motion To Lift Stay And For Summary Judgment, Statement Of Material Facts As To Which There Is No Genuine Dispute, ¶¶ 6-7.

[6] MacPherson properly could cite Scanio, a 1990 decision, because Congress immediately amended 31 U.S.C. § 5324 to overturn a 1994 Supreme Court decision, Ratzlaf v. United States, 510 U.S. 135 (1994), which required proof of wilfulness for an anti-structuring conviction. These amendments restored Scanio's authority.

Code or the Code of Federal Regulations, nor that he know the precise destination or address of the recipient agency for reporting relevant currency transactions.  As MacPherson indicates, knowledge and intent to frustrate the reporting of cash transactions can be inferred from indirect evidence.  Id. ("The law, however, recognizes that the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom.").  Mr. Glascon's actions would suffice to support the forfeiture, but his affidavit supplies direct proof of the requisite intent.  He has stated that he knew the bank required reports of him about cash deposits of more than $10,000, even if he claims he was ignorant or confused about why the bank had this requirement.  Similarly, Mr. Glascon has stated that he knew of the "$10,000 threshold" in the fall of 2004, months before he and his wife structured cash deposits 40 times between December 2004 and March 2005.  Last, in the context of learning of the bank's reporting requirement and the $10,000 threshold, Mr. Glascon's affidavit states that he limited his cash deposits to precisely $10,000, so that the report would not have to be completed, because he wanted to get back to managing his business.  These do not create genuine issues of disputed material fact about the knowledge and intent that are relevant to this case.  Rather, Mr. Glascon's affidavit confirms the government's summary judgment motion: he structured deposits into S&S Liquors's bank account so that reports would not be made of cash deposits of more than $10,000.[7]

---

[7] Although the Court must draw inferences in claimants's favor, it need not unblinkingly accept the palpably incredible.  Can Mr. Glascon credibly contend that he felt safer carrying $10,000 in cash, plus a few thousand dollars in money orders, than he would have with $10,000 in cash, plus and a few thousand dollars more in cash?  In ¶ 8 of his affidavit, Mr. Glascon states: "I felt it prudent and necessary to convert the store's cash into money orders because of the store's location in a high crime area . . .  The loss of thousands of dollars could potentially put the store out of business.  Stolen money orders . . . cannot be negotiated by another. . . . [T]hese money orders (unlike cash) are recoverable. . . ."  This being true, why did Mr. Glascon choose to make deposits by carrying around $10,000 in cash, along with a few thousand dollars in money orders?  Why not all money

### *Summary Judgment is Appropriate*

18.     Claimants argue that summary judgment is inappropriate in this anti-structuring forfeiture case. The contention lacks merit, and claimants have cited poor authority to support it.

19.     "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it to accomplish this purpose." Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). Summary judgment is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action, not a disfavored procedural shortcut. Id. at 327. "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact . . . but also for the rights of persons opposing such claims and defenses to demonstrate . . . prior to trial, that the claims and defenses have no factual basis." Id.[8]

20.     Claimants err when asserting that the "adjudication of a case by the record imports a high risk of injustice *where the act itself, such as structuring, is not a crime.*" Claimants' Opposition, etc., at 11 (emphasis added). The assertion is fatally flawed because, of course, structuring is a crime. See 31 U.S.C. § 5324(d) (stating criminal penalties for "structuring transactions to evade reporting

---

orders? Why precisely $10,000 in cash? How much less time did it really take to go buy all of the money orders at different places than it would have taken to fill out a CTR report?

[8] Claimants cite Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962), but this is unpersuasive and inapposite authority. Poller antedates by nearly a quarter century Celotex's modern explication of summary judgment principles. More important, claimants cite Poller only for *dictum*. Immediately before the language quoted in claimants's brief, Poller stated specifically, "We believe that summary procedures should be used sparingly in *complex antitrust litigation* where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." Id. at 491 (emphasis added).

requirement"). Claimants's citations for their assertion, United States v. Wynn, 314 U.S. App. D.C. 35, 61 F.3d 921, cert. denied, 516 U.S. 1015 (1995), and United States v. Simon, 85 F.3d 906 (2d Cir.), cert. denied, 509 U.S. 1011 (1996), recognize that structuring is a crime. Indeed, Simon actually affirmed a conviction for the crime of structuring, in violation of 31 U.S.C. §§ 5322 & 5324, against a challenge to the sufficiency of the evidence. See United States v. Simon, supra, 85 F.3d at 907. Wynn affirmed several criminal convictions, but overturned one for criminal structuring. Wynn v. United States, supra, 314 U.S. App. D.C. at 41-42, 61 F.3d at 927-928. Wynn did not throw out the structuring conviction because structuring is – or was – not a crime, but because the evidence failed to prove wilfulness. Id. As Wynn noted, however, its 1995 holding essentially had a milli-second shelf-life, because by then Congress already had amended the anti-structuring criminal law, 31 U.S.C. §5324, to eliminate a wilfulness element. Wynn v. United States, supra, 314 U.S. App. D.C. at 42, 61 F.3d at 928. Presumably, if structuring were not a crime, then claimants would have had no basis for a stay of this civil forfeiture action under 18 U.S.C. § 981(g)(2).

21. Summary judgment is appropriate where " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, 477 U.S. at 322.

**WHEREFORE**, plaintiff prays this Honorable Court to grant its motion to lift the stay and to enter summary judgment in plaintiff's favor.

Respectfully submitted,

                                        JEFFREY A. TAYLOR  
                                        UNITED STATES ATTORNEY  
                                        D.C. Bar No. 498610  

                                        /s/  
                                        WILLIAM R. COWDEN, D.C. Bar No. 426301  
                                        BARRY WIEGAND, D.C. Bar No. 424288  
                                        Assistant United States Attorneys  
                                        555 4th Street, N.W.  
                                        Washington, DC 20530  
                                        William.B.Wiegand@USDoJ.Gov  
                                        (202) 307-0299  
                                        (202) 514-8707 (fax)  

## CERTIFICATE OF SERVICE

      I certify that I caused the foregoing to be served upon claimants' counsel via the Court's ECF system, on this <u>25th</u> day of October 2007.

                                        /s/  
                                        BARRY WIEGAND