```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
```

UNITED STATES OF AMERICA,           :
                                    :
        Plaintiff,                  :
                                    :
   v.                               :  Civil Action No. 06-0212 (JR)
                                    :
$225,444.14 IN UNITED STATES        :
CURRENCY,                           :
                                    :
        Defendant.                  :

**MEMORANDUM ORDER**

For the reasons explained below, the government's motion for summary judgment [Dkt. 20] in this civil in rem forfeiture action is **denied.**

**I. Background**

A. Procedural History

The government seeks the forfeiture of $225,444.14 that was seized on July 27, 2005, from a bank account held by Stop and Shop Liquors ("S&S Liquors") at the Industrial Bank of Washington. The government contends that the funds are property involved in violations of 31 U.S.C. §§ 5324(a)(1) and (a)(3), provisions that, respectively, make it a crime 1) to cause or try to cause a bank to fail to file a Currency Transaction Report ("CTR") and 2) to structure cash deposits in order to evade the requirement to file a CTR. Under federal law, a CTR must be filed whenever a cash deposit of more than $10,000 is made at a U.S. bank. 31 U.S.C. § 5313(a); 31 C.F.R Part 103. Property

involved in a violation of 31 U.S.C. § 5313 is subject to civil forfeiture.  31 U.S.C. § 5317(c)(2).

In March 2006, claimants Franklin A. Glascon and G. Renee Glascon each filed a Statement of Interest in the funds and answered the government's forfeiture complaint.  On April 10, 2006, Franklin Glascon filed a motion to stay this proceeding until the resolution of a related criminal investigation.  In his stay motion, Mr. Glascon asserted that "continuation of the civil forfeiture proceeding will burden the right of the Claimant against self-incrimination in the related criminal investigation because information obtained through the discovery process could potentially be used against Claimant in his criminal case." [Dkt. 7 at 3].  Without objection from the government, the case was stayed on April 12, 2006, and has remained so since that time.  No discovery has taken place.  In the motion to lift the stay and for summary judgment now before the Court, the government asserts that it does not need discovery in order to move forward and contends that the claimants' own statements entitle the government to judgment as a matter of law.

B. Factual Background

Mr. and Mrs. Glascon operate S&S Liquors together. Although Mr. Glascon actually runs the business, Mrs. Glascon told MPD Detective Phillip Robinson that ownership is in her name because of her husband's previous felony conviction for tax

evasion.  <u>Robinson Aff.</u> at ¶ 14.  Mr. Glascon told Detective Robinson that he has an undergraduate degree from Georgetown University and that he is three credits shy of a master's degree in accounting, also from Georgetown.  <u>Id.</u> at ¶ 23.  Before opening S&S Liquors, Mr. Glascon worked as an auditor at Price-Waterhouse, as a loan review officer at Riggs Bank, and as a systems analyst in D.C. government.  <u>Id.</u>  Oddly, Mr. Glascon pays all of his employees in cash.  <u>Id.</u> at ¶ 10.

      Between December 1, 2004, and February 25, 2005, forty-one cash deposits of exactly $10,000 each were made into S&S Liquors' account at Industrial Bank of Washington.  Thirty-seven of these deposits were made on separate dates.  On both December 24 and December 31, 2004, two separate deposits of exactly $10,000 in cash were made into the account.  In his interview with Detective Robinson, Mr. Glascon stated that the business makes cash deposits in the amount of $10,000 dollars almost every day:

> [Glascon] stated that in the past he had bought money orders to compensate for the surplus cash, as to keep the cash deposits from exceeding $10,000.  He said that sometimes there would be cash left over that he would store at the business.  He stated that he didn't want to deposit over $10,000 because that would require him to file a form (Currency Transaction Report), which he did not have time to fill out.  Additionally, he said that he had asked the bank for an exemption and the manager stated that he would have to establish a "history."  He has

>not re-addressed the issue with the manager since.

Id. at ¶ 6.  Det. Robinson asked Mr. Glascon why he did not make fewer, larger deposits, if his intention was to save time. Glascon "responded by saying that he did not think of that at the time, but it would probably have been a good idea in hindsight." Id. at ¶ 21.  Notwithstanding any concerns about time-saving, Mr. Glascon would sometimes visit multiple stores, purchasing $500-$1000 in money orders at each location, with the portion of his cash that exceeded $10,000 before making his daily deposit. Id. at ¶ 8.  In other words, the Glascons would sometimes make a deposit in excess of $10,000, but would use money orders to limit to $10,000 the amount of the cash deposit.  In her interview with Det. Robinson, Mrs. Glascon stated that:

>on the days which she made deposits, they were actually made by her, the deposits slips were filled out by her, but it was her husband who told her never to deposit more than $10,000 in cash.  She stated that she had, in the past, bought money orders to replace the cash, which would have to be deposited in excess of $10,000.

Id. at ¶ 16.

Although Mr. Glascon moved for a stay in this case asserting that the discovery process would burden his Fifth Amendment right against self-incrimination, faced with the government's motion for summary judgment, he submitted an

affidavit claiming that he "did not know that the bank was legally required" to file CTRs:

> When I made the deposits that are the subject of the forfeiture action associated with funds from Stop and Shop Liquors I did not know that the bank was legally required to provide the information to the IRS.
>
> I did know that the bank required them of me, but I believed they were the bank's own internal, administrative requirements, not legal duties.
>
> I sought to save time, not to frustrate the bank's legal requirements, again, because I was unaware of the bank's legal duties.  I was simply a small business seeking to save time and get back to managing my business.
>
> In fact, I reasoned to myself that I could not be doing anything other than something that was an administrative inconvenience to the bank, because every dime of the money that I supposedly structured would be, and has been, declared through the federal income tax filings of the business, as revenues to my business for the relevant tax years.  A review of the store's tax filings would confirm this.
>
> The $10,000.00 threshold was established subsequent to a conversation that I had with the bank manager in the fall of 2004.  I requested that the bank relieve me of any obligation to fill out a report.  The bank manager never informed me that the report was required by the government.  I was left with the impression that this was an internal bank requirement.

<u>Glascon Aff.</u> at ¶¶ 3-7.  No documentation – no tax returns, no revenue statements, no affidavit from a bank manager – has been provided to corroborate this affidavit.

**II. Analysis**

A. Standard of Review

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), sets forth the framework for forfeiture actions, like this one, commenced on or after August 23, 2000.  Prior to CAFRA, the burden of proof in civil forfeiture proceedings "tilted heavily in the government's favor" because it bore only "the minimal burden of demonstrating probable cause[.]" United States v. 80,180.00 in United States Currency, 303 F.3d 1182, 1184 (9th Cir. 2002).  For a claimant to successfully contest seizure and regain his property, he was required to demonstrate by a preponderance of the evidence that the property was not properly subject to forfeiture.  See, e.g., United States v. Leak, 123 F.3d 787, 792 (4th Cir. 1997).  CAFRA was enacted in response to the perceived unfairness of these standards.  See United States v. Real Prop. in Section 9, 241 F.3d 796, 799 (6th Cir. 2001). It "level[s] the playing field" between the government and claimants by assigning to the government the burden of proof "normally borne by the plaintiff in a civil case – preponderance of the evidence." Id.; 18 U.S.C. 983(c)(1).  Post-CAFRA, the government bears "the ultimate burden" of establishing that property is subject to forfeiture.  United States v. 5208 Los Franciscos Way, 385 F.3d 1187, 1193 (9th Cir. 2004).

CAFRA's allocation of the burden of proof to the government is significant here because "[t]he Supreme Court has indicated that the allocation of the substantive burden of proof informs [the] decision on the propriety of the grant of summary judgment." American Federation of Government Employees v. Skinner, 885 F.2d 884, 893 (D.C. Cir. 1988) (discussing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  As the party moving for summary judgment, the government "bears the initial burden of identifying evidence that demonstrates the absence of any genuine issue of material fact." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  Because the government is not only the movant but also carries the burden of proof at trial, this initial burden is a substantial one.  "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitled it to a directed verdict if not controverted at trial.'" United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quoting Celotex Corp., 477 U.S. at 331) (Brennan, J., dissenting)).  In other words, the government "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." Wasserman v. Bressman, 327 F.3d 229, 238 (3d. Cir. 2002) (quoting Four Parcels, 941 F.2d at 1438); see also EEOC v. Union Independiente

De La Autoridad De Acueductos y Alcatraillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) ("Where, as is the case here, the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.") (internal quotation omitted); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir 1986)("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

Of course, the other familiar standards under Rule 56(c) also apply. In evaluating the evidence, the Court must "view facts and draw reasonable inference in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (quotations and citation omitted). "[A]t the summary judge stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

B. Elements of the offense

Title 31 U.S.C. § 5324 provides, in relevant part:

> [N]o person shall for the purpose of evading
> the reporting requirement of section 5313(a)
> [of Title 31] with respect to such
> transaction -- (1) cause or attempt to cause a
> domestic financial institution to fail to file
> a report required under section 5313(a) . . .
> [or] (3) structure . . . any transaction with
> one or more domestic financial institutions.

31 U.S.C. § 5324(a). On its face, "section 5324 requires a specific and precisely defined *mens rea*: a person must structure 'for the purpose of evading the reporting requirements of section 5313(a).'" United States v. Dollar Bank Money Market Account No. 1591768456, 980 F.2d 233, 237 (3d Cir. 1992) (quoting 31 U.S.C. § 5324). Thus, to make out a structuring violation as a predicate for forfeiture, the government must prove that someone: (1) engaged in acts of structuring; (2) did so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $ 10,000; and (3) acted with the intent to evade this reporting requirement. United States v. Macpherson, 424 F.3d 183, 189 (2d Cir. 2005).

As the government's papers emphasize, willfulness – knowledge of the illegality of structuring – is not an element of the offense. United States v. Pang, 362 F.3d 1187, 1193 (9th Cir. 2004); United States v. Wynn, 61 F.3d 921, 928 (D.C. Cir 1995). What the government does not recognize, however, is that willfulness has been properly differentiated from the *mens rea* that is required here, namely, an awareness that banks are

- 9 -

required by law to file CTRs.  Macpherson, 424 F.3d at 189; Dollar Bank, 980 F.2d at 238.

C. Evidence in this case

The government argues that it is entitled to summary judgment based on the claimants' statements to Detective Robinson, specifically Mr. Glascon's statements: (1) that "in the past he had bought money orders to compensate for surplus cash, as to keep the cash deposits from exceeding $10,000;" (2) that "he didn't want to deposit over $10,000 because that would require him to file a form (Currency Transaction Report), which he did not have the time to fill out;" and (3) that "[h]e would not exceed $10,000 because that would trigger a report, which would consume too much time and cause him to be late opening his business."  Robinson Aff. at ¶¶ 6, 21.  The government also points to Mrs. Glascon's statement to Detective Robinson that "on the days which she made deposits, they were actually made by her, the deposit slips were filled out by her, but it was her husband, who told her never to deposit more than $10,000 in cash."  Id. at ¶ 16.

Again, because the government is the summary judgment movant and also bears the burden of proof at trial, the inquiry is whether the Glascons' statements satisfy the government's initial burden to affirmatively demonstrate the absence of a genuine issue of material fact as to each element of the offense.

Fontenot, 780 F.2d at 1194.  The government has clearly carried its burden on the first element of § 5324 – the claimants have admitted that they structured their deposits so as never to deposit more than $10,000 in cash.  The government has also carried its burden on the core of the third element: in stating that he limited his deposits to $10,000 so that he would not have to fill out a report, Mr. Glascon has admitted an intent to evade a reporting requirement.  Whether the government has carried its initial burden comes down to its showing on the second element, which requires proof that structuring took place "for the specific purpose of evading federal reporting requirements." Dollar Bank, 980 F.2d at 237.  As the Third Circuit has explained:

> The statute does not prohibit evasion of any
> reporting requirement, such as a bank policy, but
> only the requirements imposed by law under 31
> U.S.C. § 5313(a).  A person cannot act for the
> purpose of evading the legal reporting
> requirements if he does not know that they exist.

Id.  See also United States v. Scanio, 900 F.2d 485, 491 (2d. Cir. 1990) ("Congress sought to protect unwary bank customers by requiring proof that they knew of, and intended to evade, the reporting provision[.]").

    On this *mens rea* element, the government's showing falls short.  Mr. Glascon's statement to Det. Robinson, "that he didn't want to deposit over $10,000 because that would require

- 11 -

him to file a form (Currency Transaction Report), which he did not have time to fill out[,]" is silent as to whose requirement it was to file a CTR – the bank's or the federal government's. Of course, the finder of fact could consider Mr. Glascon's accounting background and the lengths to which he went to avoid depositing amounts over $10,000 to conclude, even without direct evidence, that he knew that the bank was legally required to file the CTR.  But this is not the only permissible inference that a factfinder could draw.  Mr. Glascon's statement that he "asked the bank for an exemption and the manager stated that he would have to establish a 'history'" in order to avoid the filing requirement could support the conclusion that Mr. Glascon thought that he was dealing with internal bank requirement.  As the record now stands, to find that Mr. Glascon knew that the bank was legally required to report transactions over $10,000 would be to draw an inference in favor of the government.  At the summary judgment stage, such an inference cannot be drawn.

Because the government has not conclusively shown that Mr. Glascon was aware of the legal nature of the reporting requirement that he sought to evade, the motion for summary judgment must be denied.  To be clear, I have not concluded that Mr. Glascon's <u>ipse dixit</u> affidavit creates a genuine issue of material fact.  I have only decided that the government failed to properly support its motion, which it must do before the non-


movant can be required to set forth facts showing that there is a genuine issue for trial. See Anderson, 477 U.S. at 250; National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (2d Cir. 1992) ("[W]here the movant bears the burden of at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented.") (quoting Resolution Trust Corp. v. Gill, 960 F.2d 336, 340 (3d Cir. 1992)).

### III. Conclusion

With the passage of CAFRA, the government now has the burden of proving a civil claimant's *mens rea*. Compare Dollar Bank, 980 F.2d at 238 n.2. This does not mean that the government will never be able to make out its initial summary judgment burden on a structuring offense. Direct evidence of the claimant's knowledge, such as an affidavit from a bank employee, stating that the claimant was informed that the bank is legally required to report deposits over $10,000, would suffice. Id. at 240 n.4.

In the end, this denial of the government's motion for summary judgment may be a Pyrrhic victory for the claimants. If a jury is presented with the facts that I have been presented with, it might well find specific intent proven, and decide in favor of the government, without more. At trial, moreover, Mr. Glascon could not simply put his affidavit into evidence. If

he wished to put before the jury the sort of testimonial evidence that he has sought to put before me, he would have to testify, and the absence of corroborating business and tax records would surely be noted.

The clerk is directed to set a status conference within 30 days of the date of this order.

**SO ORDERED.**

                                    JAMES ROBERTSON
                              United States District Judge